**Charles E. WILLIAMS, Plaintiff-Appellant,**

v.

**James N. SINCLAIR et al., Defendants-Appellees.**

**Dan R. CARLSON and Frank Yazzolino, Plaintiffs-Appellants,**

v.

**James N. SINCLAIR et al., Defendants-Appellees.**

**Nos. 73–3166, 73–3169.**

United States Court of Appeals, Ninth Circuit.

Dec. 15, 1975.

As Amended on Denial of Rehearing and Rehearing En Banc March 29, 1976.

---

William B. Murray (argued), Portland, Or., for plaintiffs-appellants.

Barnes H. Ellis (argued), Davies, Biggs, Strayer, Stoel & Boley, Leigh D. Stephenson (argued), Hall & Novack, Portland, Or., for defendants-appellees.

## OPINION

Before KOELSCH and ELY, Circuit Judges, and VOORHEES,* District Judge.

VOORHEES, District Judge:

Plaintiffs appeal from the dismissal with prejudice of their securities fraud actions. For the reasons stated below, we reverse and remand.

Data Pacific Corporation (Data Pacific) was incorporated in 1967 under Oregon law in order that it might enter the burgeoning field of data processing. Its stock was first offered and sold to the public in 1967.

Data Pacific made a second public offering of 467,631 of its shares in the spring of 1969. As an integral part of that offering Data Pacific issued a prospectus, which became effective on April 21, 1969. The prospectus included detailed financial statements and representations as to the status of the research and development projects of the corporation. In addition, the prospectus stated that Data Pacific had orders, approximating one million dollars, for a data collection machine identified as the DP-1000. All of the offered shares were purchased by the public.

By the terms of the public offer current shareholders were given the opportunity, through warrants, to purchase additional shares at a price of $5.00 per share. The balance of the shares were offered to the general public at a price of $5.60 per share. The offering was registered by Data Pacific with the Securities and Exchange Commission.

Appellant Williams, who was a prior shareholder, purchased 238 of the offered shares. Appellants Carlson and Yazzolino, who had not previously been shareholders, purchased a total of 500 shares.

In the months following the second public offering, Data Pacific experienced a series of setbacks, and its stock steadily declined in price. At the annual meeting of the corporation on October 20, 1969, its president conceded that many of the DP-1000 purchase orders, referred to in the April prospectus, were not firm. The DP-1000 never went into production, and none of the purchase orders for that machine were ever filled.

On August 19, 1971, Williams filed a complaint on behalf of a class comprised of all owners of Data Pacific stock. He named as defendants the corporation, its officers and directors, certain underwriters and an accounting firm. The complaint alleged violations of the Securities Act of 1933 and the Securities Exchange Act of 1934. Specifically, it charged vio-

* Honorable Donald S. Voorhees, United States District Judge, Western District of Washington, sitting by designation.

lations of 15 U.S.C. § 77k, 77q and 78j as well as violations of Rule 10b–5 of the Securities and Exchange Commission (17 C.F.R. § 240.10(b)–5). It alleged that in the 1969 prospectus there were numerous non-disclosures of material facts, the principal ones being (1) that the purchase orders for the DP-1000 were, at best, contingent and, at worst, non-existent, and (2) that the DP–1000 was incomplete and unready for production and sale.

After a hearing on April 12, 1972, of the motion by Williams for certification of the class action, the court certified a class consisting of two sub-groups: (1) those persons who owned stock in Data Pacific as of March 17, 1969 and who, on or before May 1, 1969, exercised warrants to purchase additional shares; and (2) those persons who owned Data Pacific stock at the time the 1969 prospectus was released and who either retained those shares until August 19, 1971 or who sold them at a loss between May 1, 1969 and August 19, 1971. The class did not include those persons who had purchased Data Pacific shares for the first time subsequent to the issuance of the 1969 prospectus.

Thereafter, on August 17, 1972, Carlson and Yazzolino filed a complaint, containing essentially the same allegations as the Williams complaint, on behalf of a class consisting of those persons who had first purchased Data Pacific shares subsequent to the issuance of the 1969 prospectus.

Carlson and Yazzolino moved to have the class certified, and that motion was heard by a different court than the one which had heard and ruled upon the certification motion in the Williams action.

On January 30, 1973, the court entered an order denying to Carlson and Yazzolino the right to prosecute their action as a class action.[1] That ruling was based upon the court's determination that individual questions of fact predominated over common questions by reason of the existence of a statute of limitations defense to the Rule 10b–5 claims. In reaching this result, the Court concluded that the Oregon general fraud statute, ORS 12.110(1) established the appropriate limitation period for Rule 10b–5 claims.[2]

ORS 12.110 establishes a basic two year limitation subject to the proviso that "the limitation shall be deemed to commence only from the discovery of the fraud or deceit." The court concluded that because of the disclosures at the annual meeting of Data Pacific on October 20, 1969, sufficient information had been made available to the general public by the end of 1969 to warrant investigation by a reasonably prudent investor. Accordingly, the court concluded, the claim of each plaintiff and each potential class member in the Carlson-Yazzolino action was subject to dismissal unless the claimant could show that he had no reason to suspect wrongdoing or that he was prevented by the defendants from investigating.

The court then reexamined the order which had designated the Williams case as a class action and concluded (1) that there was in that action the same predominance of individual over common questions of fact and (2) that those members of the Williams class who had not purchased additional shares but who had simply held onto their previously-purchased shares in reliance on the pro-

1. In addition to ruling upon the class designation issue, the district judge determined that these plaintiffs' claims based upon 15 U.S.C. § 77k were barred by the applicable statute of limitations contained in 15 U.S.C. § 77m. This ruling is not challenged on appeal.

2. ORS 12.110 provides as follows:

"*Within two years; determination of period in action for fraud or deceit; injuries to per-*

son from professional malpractice. (1) An action for assault, battery, false imprisonment, for criminal conversation, or for any injury to the person or rights of another, not arising on contract, and not especially enumerated in this chapter, shall be commenced within two years; provided, that in an action at law based upon fraud or deceit, the limitation shall be deemed to commence only from the discovery of the fraud or deceit."

spectus lacked standing to sue by reason of the purchaser-seller rule.[3] The court thereupon entered an order revoking the class designation in the Williams action. No notice of this order was sent to those persons who had previously elected to become members of the class.

Following the entry of these orders, the defendants moved for summary judgment of dismissal against the § 11 (15 U.S.C. § 77k) and Rule 10b–5 claims of Williams. The court denied the motion for summary judgment as to the § 11 claim but granted that motion as to the Rule 10b–5 claim on the ground that there was no evidence that Williams had relied on any material representation in the 1969 prospectus.

Following this ruling, all defendants except Touche Ross and Co., offered to settle the remaining claims of Williams, Carlson and Yazzolino. Thereafter the court entered an order that if those defendants paid into the registry of the court a sum totalling the face amount of the claims of these three claimants together with interest from date of purchase, the court would enter an order directing plaintiffs to show cause why that sum should not be paid out to them and the actions dismissed. Those defendants did deposit the required sum into the registry of the court, and the order to show cause issued.

At the show cause hearing plaintiffs expressed an unwillingness to accept the disposition suggested by the court as they wished to preserve their right to appeal from the class action rulings.

The court, however, ruled that plaintiffs had failed to show cause why the actions should not be dismissed, and thereafter entered an order directing that the monies deposited in the registry of the court be paid over to plaintiffs and dismissing with prejudice both the Williams and the Carlson/Yazzolino actions.

Plaintiffs appeal from the orders striking the class action allegations in both cases, from the order dismissing plaintiff Williams' Rule 10b–5 claim, and from the order of dismissal of both actions. Williams also appeals from the failure of the court to make findings of fact pursuant to F.R.C.P. 56(d), following its denial of his motion for summary judgment.

## CLASS ACTION DETERMINATIONS

**A. Applicable statute of limitations:**

■ Since there is no applicable federal statute of limitations as to Rule 10b–5 claims, Oregon law is here controlling as to those claims. Appellants contend that the appropriate statute of limitations for Rule 10b–5 actions brought in Oregon is the six year period provided for in ORS 12.080.[4] Appellees argue that the trial court correctly applied the two year limitation period found in ORS 12.100, the general fraud statute of Oregon. If appellants' contention were correct, no limitations problem would arise as both lawsuits were filed within six years after April, 1969.

This court had occasion to consider this issue in the context of Washington law in *Fratt v. Robinson,* 203 F.2d 627

---

**3.** The purchaser-seller rule was first enunciated in *Birnbaum v. Newport Steel Corp.,* 193 F.2d 461 (2nd Cir. 1952), cert. denied, 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952), where the court concluded that only actual purchasers or sellers of securities could sue for relief under Rule 10b–5. This Circuit recognized that rule in *Mount Clemens Industries, Inc. v. Bell,* 464 F.2d 339 (9th Cir. 1972), and the United States Supreme Court has recently noted its approval of the rule in *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975).

**4.** ORS 12.080 *Within six years.* (1) An action upon a contract or liability, express or implied,

excepting those mentioned in ORS 12.070 and 12.110 and except as otherwise provided in ORS 72.7250;

(2) An action upon a liability created by statute, other than a penalty or forfeiture, excepting those mentioned in ORS 12.110;

(3) An action for waste or trespass upon or for interference with or injury to any interest of another in real property, excepting those mentioned in ORS 12.050, 12.060, 12.135 and 273.241; or

(4) An action for taking, detaining or injuring personal property, including an action for the specific recovery thereof; shall be commenced within six years.

(9th Cir. 1953). In that case the Washington general fraud statute was held to be the appropriate limitations statute. This decision was reaffirmed in *Douglass v. Glenn E. Hinton Investments, Inc.,* 440 F.2d 912 (9th Cir. 1971).

The trial court correctly applied the Oregon general fraud statute as the statute of limitations applicable to Rule 10b–5 actions.[5]

**B. Whether common or individual questions predominate:**

■ As outlined, above, the trial court grounded its class action rulings upon its finding that the existence of a statute of limitations defense made necessary separate determinations of the date when each plaintiff discovered or in the exercise of reasonable diligence should have discovered the alleged fraud.[6]

This court has very recently reconsidered the role of class actions in the enforcement of federal securities laws. *Blackie v. Barrack,* 524 F.2d 891 (9th Cir., 1975). The opinion of the court in that matter recognized that the presence of individual issues, such as damages or reliance, did not necessarily defeat class action consideration of alleged violations of federal securities laws.[7]

The existence of a statute of limitations issue does not compel a finding that individual issues predominate over common ones. Given a sufficient nucleus of common questions, the presence of the individual issue of compliance with the statute of limitations has not prevented certification of class actions in securities cases. *Umbriac v. American Snacks, Inc.,* 388 F.Supp. 265, 272 (E.D. Pa.1975); *Cohen v. District of Columbia National Bank,* 59 F.R.D. 84, 90 (D.D.C. 1972); *Lamb v. United Security Life Co.,* 59 F.R.D. 25, 34–37 (S.D.Iowa 1972); *Dolgow v. Anderson,* 43 F.R.D. 472 (E.D. N.Y.1968).

The record before us leads us to the conclusion that common questions predominate over individual ones in both the Williams and the Carlson-Yazzolino actions and that a class action would be a superior means for the fair and efficient adjudication of each of those controversies.

In their briefs appellees argue that the question of individual reliance should defeat class certification. In addition, they challenge the fitness of appellants to be representatives of the class. The reliance issue has been resolved by *Blackie v. Barrack, supra.* As for the fitness of appellants to represent the class, the tri-

**5.** We note that, at least since 1972, district courts in the District of Oregon have recognized ORS 12.110 to be the governing statute of limitations in Rule 10b–5 actions. See *Hoffert v. E. F. Hinkle & Company, Inc.,* 56 F.R.D. 395, 400 (D.Or.1972).

**6.** Rule 23(a) of the Federal Rules of Civil Procedure provides as follows:

*Prerequisites to a Class Action.* One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Rule 23(b)(3), under which these classes are sought to be certified, requires the trial court to find, in addition to the requisites set out in Rule 23(a), that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. . . ."

This circuit considered some of the problems with respect to class actions in securities cases in *Harris v. Palm Springs Alpine Estates, Inc.,* 329 F.2d 909 (9th Cir. 1964), and the conclusions contained therein remain largely unaffected by the amendments to Rule 23 in 1966. For an extended discussion of the amended Rule see *LaMar v. H & B Novelty & Loan Company,* 489 F.2d 461 (9th Cir. 1973).

**7.** Courts in other jurisdictions have consistently reached the same conclusion. *Green v. Wolf Corporation,* 406 F.2d 291 (2nd Cir. 1968); *Werfel v. Kramarsky,* 61 F.R.D. 674 (S.D.N.Y.1974); *Feder v. Harrington,* 52 F.R.D. 178 (S.D.N.Y.1970); *Dolgow v. Anderson,* 43 F.R.D. 472 (E.D.N.Y.1968); *Kronenberg v. Hotel Governor Clinton, Inc.,* 41 F.R.D. 42 (S.D.N. Y.1966).

al judge did not appear to regard them as unsuitable champions. We see no reason to disagree with his conclusions in that regard.

## C. Purchaser-Seller Rule:

■ Included in the class designated by the original order in the Williams action were those individuals who held Data Pacific shares prior to the issuance of the 1969 prospectus and who retained those shares after the issuance of that prospectus without making any further purchases or sales. In the subsequent order, revoking the class designation, the district court ruled that those individuals lacked standing to sue under Rule 10b–5 inasmuch as they neither purchased nor sold shares in reliance upon the alleged misrepresentation or concealments.

In light of the decision of the Supreme Court in *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975), we affirm the correctness of the ruling below. The warrants offered to the existing stockholders of Data Pacific in the prospectus were neither contracts to purchase nor to sell securities within the definition of 15 U.S.C. § 78c(a).[8] The pre-prospectus shareholders, who did no more than retain their shares, are hence barred by the purchaser-seller rule from maintaining an action under Rule 10b–5.[9]

## DISMISSAL OF WILLIAMS' RULE 10b–5 CLAIM

■ The district court dismissed the Rule 10b–5 claim of Williams on the ground that affirmative proof of reliance was a necessary element of plaintiffs' case.

The opinion in *Blackie v. Barrack, supra,* includes a comprehensive discussion of the role of reliance in Rule 10b–5 cases where the claimant alleges omissions and non-disclosures. In line with *Affiliated Ute Citizens v. United States,* 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972) this court held in *Blackie* that subjective reliance was not a distinct element of proof in Rule 10b–5 claims where the action was grounded upon non-disclosures rather than upon misrepresentations of fact.

The court below dismissed the Rule 10b–5 claim of Williams largely on the basis of certain statements made by Williams in a deposition. Although that deposition was not included in the record on appeal, it is evident from the portions quoted in the briefs of counsel and from the order granting summary judgment that Williams had received and arguably had read the 1969 prospectus prior to his purchase of shares. Because the purchase by Williams of additional shares followed his receipt of the prospectus, the transactional nexus between the alleged fraud and the loss, required by *Raschio v. Sinclair,* 486 F.2d 1029 (9th Cir. 1973),[10] is present and, in light of the reasoning of *Blackie v. Barrack,* further proof of reliance is not required. While a defendant is still free to attempt to disprove causation as to a particular plaintiff, there remain material issues of fact in connection with the Rule 10b–5

---

**8.** 15 U.S.C. § 78c(a)(13) provides that "The terms 'buy' and 'purchase' each include any contract to buy, purchase, or otherwise acquire."

15 U.S.C. § 78c(a)(14) provides that "The terms 'sale' and 'sell' each include any contract to sell or otherwise dispose of." See the discussion of these definitions in *Blue Chip Stamps v. Manor Drug Stores, supra,* n. 13, 421 U.S. at 750, 95 S.Ct. at 1932, 44 L.Ed.2d at 558.

**9.** It is clear that the § 11 claims are also barred as that statute covers only persons acquiring securities pursuant to the allegedly

false registration statement. 15 U.S.C. § 77k (a).

**10.** *Raschio v. Sinclair* also arose out of Data Pacific's 1969 securities offering. The plaintiffs in that case had, however, purchased their Data Pacific stock prior to the issuance by the company of its allegedly fraudulent prospectus. The trial court granted summary judgment for the defendants upon the ground that plaintiffs' purchase of stock was not made in connection with the allegedly fraudulent acts of defendants. This court affirmed that summary judgment.

claim of Williams and that claim should not have been dismissed.

## DISMISSAL OF THE ACTIONS

 By reason of our holdings with respect to the class action issue and the Rule 10b–5 claim of Williams, we are constrained to reverse the trial court's order dismissing with prejudice the actions of appellants after they had refused to accept the settlements proffered by defendants.

## PLAINTIFF'S REQUEST FOR FINDINGS OF FACT

 Williams assigns error by reason of the trial court's failure to make findings of fact pursuant to F.R.C.P. 56(d), following its denial of plaintiff's motion for partial summary judgment on liability.

Plaintiff did not formally move for such findings until eight months after his motion for summary judgment was denied in all respects. He then sought some 158 separate findings of fact. By this time the pretrial proceedings had reached the stage of drafting a pretrial order incorporating a statement of agreed facts. The district court properly viewed the belated motion for findings of fact as being without merit.

For the reasons stated above the judgments of dismissal entered below are reversed and this matter is remanded for action not inconsistent with this opinion.