523 F.Supp. 563 (1980)
In re INVESTORS FUNDING CORPORATION of New York Securities Litigation.
Robert MORSE and Claire Morse, Plaintiffs,
v.
PEAT, MARWICK, MITCHELL & CO., et al., Defendants.
MDL Docket No. 290 (WCC), No. 75 Civ. 3681 (WCC).
United States District Court, S. D. New York.
December 8, 1980.
*564 Milberg, Weiss, Bershad & Specthrie, New York City, for plaintiffs; David J. Bershad, Jerome M. Congress, Harry L. Garmansky, Craig L. Tessler, Paul Dillon, New York City, of counsel.
Cahill, Gordon & Reindel, New York City, for defendant Peat, Marwick, Mitchell & Co.; R. Anthony Zeiger, John H. de Boisblanc and Leonard P. Novello, Associate Gen. Counsel, New York City, of counsel.
Proskauer, Rose, Goetz & Mendelsohn, New York City, for defendant Ernst & Whinney, as successor to S. D. Leidesdorf & Co.; David I. Goldblatt, David Aronson, Gary B. Bettman, New York City, of counsel.

OPINION AND ORDER
CONNER, District Judge:
Before the Court are motions by defendants Peat, Marwick, Mitchell & Co. ("PMM") and Ernst & Whinney, as successor to S. D. Leidesdorf & Co. ("Leidesdorf") for summary judgment, pursuant to Rule 56, F.R.Civ.P. In his Report Number 22 ("Report"), Magistrate Harold J. Raby recommends the granting of Leidesdorf's motion and the denial of PMM's motion. Plaintiffs and PMM have filed objections to the Report, and accordingly, this Court must make a de novo determination as to the motions, as required by 28 U.S.C. § 636(b)(1).

BACKGROUND
This action, as do several others consolidated before me for pretrial purposes, arises from the financial collapse of Investors Funding Corporation of New York ("IFC"), which petitioned for reorganization under Chapter X of the Federal Bankruptcy Act on October 21, 1974. Plaintiffs seek to represent a "class consisting of all persons and entities who between July 28, 1972 and October 21, 1974, bought IFC 10% registered convertible subordinated debentures, Series Due December 31, 1978, 9% Registered Subordinated Debentures, Series Due December 31, 1978, 8% short-term subordinated notes and redeemable warrants to purchase shares of IFC Class A stock, all issued by IFC pursuant to" a Prospectus dated July 28, 1972 ("Prospectus"). The third amended complaint alleges that plaintiffs "purchased or exchanged" certain IFC debentures pursuant to the Prospectus on November 20, 1972 and December 3, 1973. However, the clarified record reveals that on October 19, 1972 plaintiffs exchanged two $5,000 9% registered subordinated debentures of IFC, series due December 31, 1977 ("1977 Debentures"), plus $1,502.10 (representing a portion of the principal previously paid to plaintiffs by IFC on plaintiffs' 1977 Debentures), for two $5,000 9% registered subordinated debentures of IFC, series due December 31, 1978 ("1978 Debentures").[1] The only difference between the 1977 Debentures and the 1978 Debentures was the maturity date. Plaintiffs did not make any other acquisitions of IFC securities after this exchange.
Defendants in this action include IFC and its officers, directors, accountants, lawyers, underwriters and banks. Count Three of the complaint is directed against Leidesdorf, Count Four against the banks, Counts Five and Six against the lawyers, and Counts One and Two against all other defendants, including PMM.
The thrust of plaintiffs' complaint against PMM is that the Prospectus, which included IFC financial statements for the year 1971 ("1971 Financials"), was materially false and misleading. The 1971 Financials *565 are alleged to have presented IFC's financial condition much more favorably than reality would allow; in fact the complaint alleges that IFC was actually insolvent when the Prospectus and the 1971 Financials were issued. Plaintiffs seek to press claims against PMM under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, ("Section 10(b)"), Section 11 of the Securities Act of 1933, 15 U.S.C. § 77k ("Section 11"), and common law fraud principles, with pendent jurisdiction being asserted for the common law claims.
Leidesdorf's purported liability under Section 10(b) and the common law is predicated on its certification of IFC financial statements for the years 1972 and 1973.

DISCUSSION[2]
PMM has moved for summary judgment on the grounds that:
(1) as to the federal claims, the October 19, 1972 exchange was not a "purchase" within the meaning of the federal securities laws;
(2) as to the federal claims, assuming that the October 19, 1972 exchange was a "purchase," plaintiffs suffered no damages in connection therewith resulting from the allegedly misleading Prospectus; and
(3) as to the nonfederal claims, the granting of summary judgment for PMM on the federal claims removes any basis for pendent jurisdiction.
Leidesdorf has moved for summary judgment on these same grounds by joining in PMM's papers. Additionally, Leidesdorf has advanced a separate ground for its motion: i. e., that because all the alleged acts of Leidesdorf occurred after October 19, 1972, the date of plaintiffs' purported "purchase," plaintiffs have no federal claim against Leidesdorf.

1. Leidesdorf

Turning first to Leidesdorf's separate contention that its post-October 19, 1972 arrival at IFC precludes any liability on its part, it is clear that Leidesdorf's position must be sustained. The complaint alleges that Leidesdorf was IFC's auditor on and after January 24, 1973, beginning more than three months after plaintiffs' exchange. Leidesdorf's liability is predicated on its certification of IFC financial statements for the years 1972 and 1973, released sometime after January 24, 1973. It is manifest that any injury incurred by plaintiffs in connection with the exchange, as distinguished from the retention, of the 1978 debentures, cannot have been causally related to the activities of Leidesdorf. And any damages resulting from the retention of the 1978 debentures cannot be the basis of a claim under Section 10(b). E. g., Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975); Denny v. Barber, 76 Civ. 548 (MEL) (S.D.N.Y. September 30, 1977), aff'd, CCH Fed.Sec.L.Rep. ¶ 96,438 (2d Cir. 1978).
The Court has addressed this issue and related issues in the Katz Opinion, wherein the Court ruled:
(1) that plaintiffs who purchased prior to the issuance of allegedly misleading financial statements cannot bring suit against the accountants under Section 10(b) regarding such financial statements;
(2) that such plaintiffs cannot reach the accountants on a theory of conspiratorial liability for prior acts of co-conspirators where, as there, the factual allegations of the complaint, if proved, cannot as a matter of law support a charge that the accountants entered a conspiracy to defraud IFC investors; and
(3) that under such circumstances, plaintiffs lacking such standing under Section 10(b) cannot proceed on behalf of purported *566 class members who may have cognizable claims.
The conclusions and discussion as to these points in the Katz Opinion is directly dispositive of the same arguments raised by plaintiffs here. The only point meriting separate attention is the question whether the complaint here, unlike those addressed in the Katz Opinion, factually alleges Leidesdorf's participation in a conspiracy relating to the allegedly misleading Prospectus. The Court concludes that it does not.
Count Three of the complaint, the only count directed at Leidesdorf, alleges that pursuant to defendants' conspiracy, IFC issued false and misleading financial statements for the years 1972 and 1973; that Leidesdorf's audit in connection therewith was not conducted in conformity with generally accepted auditing standards; and that Leidesdorf knew or should have known of facts which should have caused it to investigate certain matters which in turn should have prevented it from issuing opinions on the 1972 and 1973 financials attesting to their fairness in presenting IFC's financial position. Count Three also incorporates by reference the allegations of Count One, which contains a general and conclusory allegation that "defendants ... engaged in an unlawful combination and conspiracy ... to defraud," but otherwise makes no relevant averment as to Leidesdorf.
It is readily apparent that the factual allegations regarding Leidesdorf in this complaint, like those addressed in the Katz Opinion, are essentially in the nature of professional malpractice. It is further apparent that plaintiffs' theory of Leidesdorf's participation in the alleged conspiracy, as evidenced by the complaint and as confirmed by plaintiffs' memoranda of law, is that the alleged conspiracy to defraud IFC investors depended upon the continued misrepresentations in the 1972 and 1973 IFC financials, and that Leidesdorf's malpractice in certifying these financial statements thus contributed to the alleged conspiracy. As detailed in the Katz Opinion, such a contribution falls far short of establishing that Leidesdorf knowingly joined a conspiracy to defraud IFC investors with the intent to further that objective.
For these reasons, the Court determines that Leidesdorf is entitled to summary judgment as to the federal claim against it. Consequently, and for the reasons set forth in the discussion of pendent jurisdiction in the Katz Opinion, Leidesdorf's motion for summary judgment as to the common law claims against it is also granted.

2. PMM

Turning to the contentions advanced by PMM, the Court expresses no opinion as to the first ground advanced in support of the motion, for I am persuaded by the second ground proffered by PMM: i. e., that assuming the October 19, 1972 exchange was a "purchase," plaintiffs suffered no damages in connection therewith resulting from the allegedly misleading Prospectus.
In order to maintain an action for damages under Section 10(b), a plaintiff must have actually suffered injury as a consequence of the acts of the defendant complained of. See, e. g., Haberman v. Murchison, 468 F.2d 1305, 1313 (2d Cir. 1972); Levine v. Seilon, Inc., 439 F.2d 328, 335 (2d Cir. 1971). Similarly, Section 11 provides for damages for purchasers who incurred losses as a result of false registration statements, and does not provide an additional windfall to persons who actually profited overall from such statements. In the instant case, it is readily apparent that plaintiffs actually profited rather than sustaining loss as a result of the allegedly false 1971 Financials certified by PMM and contained in the Prospectus, and that as a result PMM must prevail on its motion as to the federal claims.
Plaintiff's initial theory of damages was that if PMM had acted competently, the Prospectus would have revealed that IFC was already insolvent, and that plaintiffs never would have exchanged the worthless 1977 debentures plus approximately $1,500 for the worthless 1978 debentures, resulting *567 in a $1,500 loss to plaintiffs. PMM counters that from the date of the exchange until the date IFC filed for bankruptcy, plaintiffs received quarterly principal repayments plus interest on the 1978 debentures totaling approximately $4,000, amounts plaintiffs never would have received, whether in connection with the 1977 debentures or the 1978 debentures, if IFC's insolvency had been disclosed when it allegedly should have been disclosed. Thus, argues PMM, while the alleged acts of PMM may have caused plaintiffs a $1,500 loss, such acts also resulted in a $4,000 benefit to plaintiffs they would otherwise not have received, for a net gain to plaintiffs of approximately $2,500.
Plaintiffs in response offer four theories as to why the apparent $2,500 net gain does not preclude their claim. First, argue plaintiffs, they may have incurred more than a $1,500 loss by way of the October 19, 1972 exchange, although their only theory as to how this is possible is the suggestion that IFC might have been more insolvent in 1974 (when IFC's insolvency was disclosed and it petitioned for reorganization) than it was in 1972 (when it is alleged that PMM failed to discover and disclose IFC's insolvency), and that payments to debenture holders through the IFC reorganization may be less than they would have been if IFC's insolvency had been disclosed in 1972. PMM argues, and the Court agrees, that such a damage claim is a matter of law too speculative in nature: i. e., that plaintiffs cannot establish that they were injured at all absent the speculation that the disclosure of IFC's insolvency would have resulted in an earlier reorganization proceeding in which plaintiffs would have received at least $2,500 more on its $10,000 debentures (i. e., enough to offset the net gain of $2,500 which resulted to plaintiffs from delaying disclosure of IFC's insolvency until 1974) than they will receive in the actual reorganization proceeding. "Proof of `actual damages' is an essential element of an action for damages for alleged violations of the Securities Exchange Act of 1934. To support a case against a motion for summary judgment it is plaintiffs' obligation to demonstrate that acceptable proof of actual damages is available. This the plaintiffs have failed to do" (citation omitted). Umbriac v. Kaiser, 467 F.Supp. 548, 556 (D.Nev.1979).
Second, plaintiffs apparently contend that PMM may be estopped to argue that plaintiffs suffered no damages in connection with the October 19, 1972 exchange, because the question of damages depends upon the value of the 1977 debentures exchanged by plaintiffs, and the diminution in the value of the 1977 debentures allegedly resulted from a fraudulent scheme involving PMM. Aside from the unspecified basis for such a theory of standing under the securities laws, plaintiffs' position ignores the fact that any effect on the value of the 1977 debentures due to the concealment of insolvency would have been precisely matched by the effect on the value of the 1978 debentures at the time of the exchange, and consequently the only possible injury to plaintiffs in connection with the exchange was the additional cash payment of $1,500.
Third, plaintiffs argue that the $4,000 received in connection with the 1978 debentures should not enter the calculation as a relevant gain because plaintiffs would have received approximately the same amount in connection with the 1977 debentures if it had not made the exchange. This position, however, is mistakenly premised upon an irrelevant comparison. As noted above, plaintiffs must causally link any claim of injury to the 1971 Financials and the alleged violation of PMM. Consequently, the relevant comparison is not simply with what would have happened but for the exchange, but rather with what would have happened but for PMM's alleged misfeasance. Thus considered, it is plain that, assuming the truth of plaintiffs' allegations in the complaint, had PMM discovered and disclosed IFC's insolvency prior to the time of the exchange, plaintiffs would not have continued to receive payments in connection with the 1977 debentures. It was, according to plaintiffs, only because of PMM's conduct that IFC was fraudulently maintained *568 from 1972 until 1974 as a going concern, and consequently plaintiffs' receipts of $4,000, and net gain of $2,500, resulted only because of PMM's allegedly illegal conduct.
Fourth, plaintiffs argue that to the extent the $4,000 in payments represents interest rather than principal, it should not be calculated as a gain to plaintiffs because plaintiffs would have earned interest on their money in an alternative investment. This contention, however, ignores both the complaint and the factual record. It is plain that if IFC had been exposed as an insolvent operation in 1972 prior to plaintiffs' exchange, plaintiffs would have been left holding $1,500 in cash plus the worthless or virtually worthless 1977 Debentures, not $10,000 which they alternatively could have invested. In any event, less than $1,500 of the $4,000 received by plaintiffs on the 1978 Debentures was interest, so that plaintiffs received $2,500 in principal which alone represents a net gain of $1,000 over the $1,500 in cash paid in the exchange.
Furthermore, the record indicates that plaintiffs benefited to a much greater extent from PMM's alleged malfeasance if one looks beyond the October 19, 1972 exchange. It appears that plaintiffs also purchased IFC debentures in 1968 and 1969, which purchases were unrelated to the Prospectus, the 1971 Financials or PMM. In 1974, plaintiffs sold many of these debentures for approximately $30,000. The face value of the debentures sold in 1974 totaled $35,000. PMM correctly points out that, accepting plaintiffs' allegations as true, by virtue of PMM's malfeasance plaintiffs were able, several years after IFC was actually insolvent, to sell worthless or virtually worthless debentures for prices approaching their face value.
In response, plaintiffs argue first that they did not profit from the 1974 sales because the sales price was less than the face value. Again this argument misses the point that the relevant yardstick is whether plaintiffs profited, not in an absolute sense, but rather as a result of PMM's failure to discover and disclose IFC's alleged insolvency. Measured as such, plaintiffs clearly profited from PMM's alleged conduct.
Second, plaintiffs argue that PMM's position ignores the losses suffered by plaintiffs concerning debentures which they didn't sell. Such losses, however, are irrelevant because, as noted, the purchase of these debentures was unrelated to PMM, except to the extent plaintiffs claim losses due to the retention of these debentures, which losses are not cognizable under the federal securities laws, e. g., Blue Chip Stamps, supra; Williams v. Sinclair, 529 F.2d 1383, 1389 n.9 (9th Cir.), cert. denied, 426 U.S. 936, 96 S.Ct. 2651, 49 L.Ed.2d 388 (1976).
For these reasons, PMM's motion for summary judgment as to the federal claims is granted. For the reasons fully discussed in the Katz Opinion, the dismissal of plaintiffs' federal claims removes the basis for pendent jurisdiction over plaintiffs' common law claims, and accordingly PMM's motion for summary judgment as to the common law claims is also granted.

CONCLUSION
The motions for summary judgment by PMM and Leidesdorf are granted.
SO ORDERED.
NOTES
[1] Another aspect of this exchange, although not relevant to the issues here presented, was the exchange of 500 warrants to purchase IFC class A common stock for another 500 warrants to purchase IFC class A common stock.
[2] Many of the legal issues arising in connection with these motions have been addressed in an Opinion and Order dated December 8, 1980 concerning motions for summary judgment by the accountants in four other actions consolidated as part of MDL No. 290: Katz v. Dansker, 76 Civ. 4721, Rothchild v. Dansker, 77 Civ. 616, Metrick v. Dansker, 78 Civ. 268, and Haber v. Dansker, 78 Civ. 532 ("Katz Opinion"). Accordingly, this Opinion refers to the Katz Opinion where appropriate rather than duplicating discussion of such issues herein.