Michael SUSMAN, Plaintiff,

v.

LINCOLN AMERICAN CORP., et al., Defendants.

No. 73 C 1089.

United States District Court, N.D. Illinois, E.D.

Feb. 8, 1983.

Thomas R. Meites and Lee H. Weiner, Meites & Frackman, Chicago, Ill., for plaintiff.

Randall L. Mitchell, Adams, Fox, Marcus, Adelstein & Gerding, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Michael Susman ("Susman") originally brought this class and derivative action on behalf of Consumers National Corporation ("Consumers") and its minority stockholders. Susman challenges the "going private" merger of Consumers into Lincoln American Life Insurance Company, a wholly-owned subsidiary of Lincoln American Corporation. This Court's October 22, 1982 opinion, 550 F.Supp. 442 ("Opinion I"):

1. found Susman's individual claims mooted by defendants' tender of the full damages allegedly sustained by him; and

2. granted summary judgment for defendants on those individual claims, conditioned on defendants' delivery of the tendered amount to Susman.[1]

Defendants now ask this Court to remove the condition Opinion I imposed on the entry of summary judgment against Susman's personal claims.[2] For the reasons stated in this memorandum opinion and order, defendants' motion for reconsideration is denied.

Defendants say this Court lacked jurisdiction (in the constitutional "case or controversy" sense) to require payment of Susman's private claims because those claims became moot at the moment the "tender" was made.[3] If accepted, that argument would give support to Dickens' Mr. Bumble. It cannot be accepted, however, for it is wholly unsupported by the controlling authorities, and it also reflects a fundamental misunderstanding of the mootness doctrine and the contractual nature of a tender.

Defendants cite no decision declaring the want of jurisdiction to condition mootness on the tendering defendant's delivery of the promised sum. Indeed, though the mechanics vary, most courts have done just that. *See e.g., Cameron v. E.M. Adams & Co.,* 547 F.2d 473, 478 (9th Cir.1976) (reversing on other grounds the district court's entry of judgment for the tendered amount in favor of named plaintiffs over their objections); *Williams v. Sinclair,* 529 F.2d 1383, 1387 (9th Cir.1975), *cert. denied,* 426 U.S. 936, 96 S.Ct. 2651, 49 L.Ed.2d 388 (1976) (reversing on other grounds the district court's dismissal order, which had directed defendants

---

1. Opinion I also:
   1. granted defendants' motion for summary judgment on the derivative claims; and
   2. denied defendants' motions for (a) summary judgment against three other class members and (b) an order barring Susman from serving as class representative.
   None of those matters is at issue here.

2. Only $520 is involved in the payment of Susman's damages. What the parties are really quarreling about is the amount of *costs* that go along with those damages—a very large tail on a very small dog. Defendants' November 17, 1977 tender offer was for "$520 plus an amount

equal to his legally recoverable costs *to date* ..." (emphasis added). Susman is asking for $7,461.69 in costs to *August 31, 1982.* Neither party has identified the amount of legally recoverable costs as of the tender offer date.

3. More accurately, defendants never made an actual tender (for the amount of the costs referred to in their tender offer letter was not then specified). They rather made an unconditional *offer,* and Opinion I held Susman's claim was mooted out so long as defendants made good on that *offer.*

to deposit the tendered funds with the court's registry for disbursement to plaintiffs); *Goldberg v. Taylor Wine Co.,* 499 F.Supp. 468, 470 (E.D.N.Y.1980) (finding a tender rendered plaintiff's individual claims moot and entering judgment for plaintiff in that amount).

Defendants seek to lean heavily on *Weisman v. Darneille,* 79 F.R.D. 389 (S.D.N.Y. 1978). But *Weisman* too recognizes the offeror's obligation to execute a previously rejected tender offer. After noting its lack of jurisdiction to adjudicate a claim mooted by a rejected tender, the district court said (*id.* at 391 n. 3):

> We do not understand plaintiff to argue that he cannot be "forced" to accept "involuntarily" the tender of damages. However, to the extent plaintiff challenges the propriety and the efficacy of such practice, his challenge is without merit. Whether or not plaintiff "accepts" a tender of damages, the case becomes moot upon tender. At that point, full-blown litigation would yield no recovery greater than that voluntarily offered by defendants, and a live controversy no longer exists between the parties. The authorities cited by plaintiff are not to the contrary [citing *Williams* and *Cameron*].

Plainly the court perceived its dismissal of plaintiff's mooted claims as tantamount to compelling plaintiff to accept the tender. Just as clearly, defendants were expected to follow through on their tender—a conclusion fortified by the court's concluding directive: "Settle judgment within ten (10) days" (*id.* at 392).

Though the cited cases do not address the constitutional issue, this Court discerns two possible "cases or controversies" supporting imposition of its requirement on defendants:

1. Susman's initial claim itself; and
2. Susman's contractual claim for the tendered amount.

Under either view the tender offer does not extinguish the "case or controversy" until Susman is made whole. *Accord, Susman v. Lincoln American Corp.,* 587 F.2d 866, 869 (7th Cir.1978) (referring to mootness of Susman's claims "artificially created by the defendant by making the named plaintiff whole"). Only at that point will Susman "no longer [have] a stake in the resolution of the issues raised in the complaint." *Weisman,* 79 F.R.D. at 391.

What the cases teach is that Susman cannot frustrate mootness by rejecting a tender offer of his full claim. This Court accomplishes that result by forcing Susman's acceptance of the offer as a matter of law.[4] But the necessary corollary is that defendants, having created that situation, are not free to frustrate it either. When Susman's acceptance has become enforceable by compulsion of law, so too has defendants' offer.[5]

Either of two orders would lead to the same end. Judgment could have been rendered for Susman in accordance with defendants' original tender offer. Opinion I (because the issue was posed by defendants' motion for summary judgment) instead granted defendants summary judgment, conditioned on delivery of the offered amount.[6]

In either event, jurisdiction exists to require defendants' payment of the promised amount. But just as defendants have sought to overreach by their jurisdictional argument, so has Susman sought to over-

---

4. See *Weisman,* 79 F.R.D. at 391:
   Whether or not plaintiff "accepts" a tender of damages, the case becomes moot upon tender.

5. *See, e.g., A.A. Allen Revivals, Inc. v. Campbell,* 353 F.2d 89 (5th Cir.1965) (per curiam) (upholding unconditional dismissal of claim mooted by government's tender, because of its continued assurances that full payment would be made).

6. Susman's prior rejection of defendants' tender offer does not relieve them of their obligation to pay. Implicit in any determination that a rejected tender offer has mooted a case is the assumption that defendants remain willing and ready to carry out the offer. *See Campbell,* 353 F.2d at 90.

reach by his current claim. Susman's inability to block mootness by intransigence must carry with it his inability to increase defendants' exposure by the same intransigence while added costs are being run up.[7] Such added costs were, after all, fairly attributable to the as-yet-unresolved class claims and the now-dismissed derivative claims, *not* to Susman's individual claim.

Accordingly this Court adheres to the position stated in Opinion I. Defendants must honor their *original* tender offer ($520 plus taxable costs to *its* date) as the condition of the grant of summary judgment on Susman's individual claims. Defendants' motion for reconsideration is denied, and they are ordered to pay the amount of the tender offer within seven days after Susman properly identifies the amount of taxable costs to be included.

---

7. For the same reason Susman cannot complain about the loss of the use of money during the five-year period since the original tender offer.