**Marjorie D. ALFUS, On Behalf of Herself and All Others Similarly Situated, Plaintiff,**

v.

**PYRAMID TECHNOLOGY CORP., Richard D. Dolinar, William Shellooe, William D. Rollnick, Stephen G. Tolchin, and Kent L. Robertson, Defendants.**

No. C–89–20184 RFP.

United States District Court, N.D. California.

April 11, 1991.

Stephen Lowey, William J. Ban, Lowey, Dannenberg, Bemporad, Brachtl & Selinger, P.C., New York City, Charles Crandall, Milberg Weiss Bershad Spechtrie & Lerach, San Diego, Cal., for plaintiff.

Dana Haviland, Wilson, Sonsini, Goodrich & Rosati, Palo Alto, Cal., Douglas Schwab, Heller, Ehrman, White & McAuliffe, San Francisco, Cal., for defendants.

## ORDER

PECKHAM, District Judge.

This matter comes before the court on defendants' second motion to dismiss the first amended complaint, and individual defendant Rollnick's motion to dismiss and to strike portions of the first amended complaint in the above-captioned matter. Plaintiff having remedied deficiencies in the original complaint, defendants' second motion to dismiss is DENIED in part and GRANTED in part for the reasons set forth herein.

## INTRODUCTION

This is a securities fraud class action brought against Pyramid Technology Corp. ("Pyramid"), several of its officers and one of its outside directors ("Defendant Rollnick"). Previously, defendants moved the court to dismiss the original complaint on the grounds that plaintiff had failed to state a claim under Section 10(b) of the Securities and Exchange Act of 1934 and Rule 10b–5 promulgated thereunder, and failed to satisfy the particularity requirements of Rule 9(b) of the Federal Rules of

Civil Procedure. In addition defendants sought the dismissal of the secondary liability claims of conspiracy and aiding and abetting, the insider trading claim and the negligent misrepresentation claim. Defendant Rollnick joined the motion to dismiss, and moved on his own behalf to strike the allegations of conspiracy against him and to dismiss the allegations of insider trading.

On March 30, 1990, this Court granted defendants' motion to dismiss, and granted plaintiff 30 days leave to amend her complaint to address certain deficiencies found in the complaint. Defendants now move to dismiss the first amended complaint and strike portions thereof, on the grounds that the deficiencies have not been corrected, and in particular that the complaint still lacks the necessary allegation of scienter to commit securities fraud. Defendant Rollnick joins in the motion, and moves on his own behalf, seeking an order striking the conspiracy allegations against him and striking the disgorgement remedy from the prayer.

## BACKGROUND

The facts are as laid out in our March 30, 1990 Order. Pyramid produces super minicomputer systems, and dominates the so-called UNIX computer market. Pyramid's stock price rose steadily from late 1987 until early 1989, but dropped relatively sharply on March 22 and 23, 1989. The stock sold for $5.50 a share in November, 1987, rose to a high of $18.75 a share on March 13, 1989, and declined to $14.00 per share on March 22, 1989, when Pyramid cautioned three securities analysts to lower their estimates of Pyramid's earnings for the quarter ending March 31, 1989. The announcement caused Pyramid's stock to drop 28.6 percent in two days, and was followed by plaintiff's suit. On June 5, 1989, defendants reportedly revealed that due to delays in shipments of its Corporate MIServer line of products, Pyramid might actually suffer a loss for its third quarter fiscal 1989. Pyramid stock allegedly plunged by $3-½ to $9-¾ per share.

The Amended Complaint claims a class consisting of all purchasers of Pyramid stock between October 31, 1988, the date that Pyramid reported its results for fiscal 1988, and June 5, 1989, the day Pyramid made its second adverse announcement regarding its financial health. The named plaintiff, Marjorie Alfus, purchased 1000 shares of Pyramid stock at $16.25 a share on January 9, 1989, and 1200 shares at $18.75 on February 7, 1989.

The original complaint made essentially two allegations concerning the Rule 10b–5 claim. Pyramid allegedly represented that there was an increasing demand for its product when in fact it knew that its dominant market share made it unlikely that the Company would duplicate past growth rates. Plaintiff based its allegations on statements made in several press releases and an annual and quarterly report. Plaintiff also asserted that a statement introducing Pyramid's new product, the Corporate MIServer, was misleading for failing to disclose that there were no "firm" orders for the product. Plaintiff also contended that the March 22, 1989 inquiry made by the securities analysts was alone enough to establish defendants' failure to disclose material information that it had well before that date.

Finally, plaintiff alleged that, in addition to being liable as direct participants, each defendant also conspired or aided and abetted the scheme to artificially maintain the price of Pyramid's common stock for their personal benefit. Count II of the complaint alleged that defendants illegally sold their stock based on inside information, and Count III contended that defendants were liable for negligent misrepresentation.

On March 30, 1990, this Court granted defendants' motion to dismiss, on the grounds that no facts were produced to support plaintiff's allegations that omissions by corporate insiders made the statements misleading, or that the statements were made other than in good faith, and that the complaint failed to allege that corporate insiders were aware of, or were reckless in not disclosing that significant technical problems existed with the Corpo-

rate MIServer. *Alfus v. Pyramid Technology Corp.*, 745 F.Supp. 1511 (N.D.Cal. 1990). Plaintiff was granted 30 days leave to amend her complaint to address these deficiencies.

On September 17, 1990, plaintiff filed a first amended complaint for violation of Section 10(b) and Section 20(a) of the Securities and Exchange Act of 1934 and Rule 10b–5 of the Securities and Exchange Commission. Defendants now move to dismiss the first amended complaint and strike portions thereof, on the grounds that the deficiencies have not been corrected, and that the complaint still lacks the necessary facts to allege securities fraud.

## DISCUSSION

### A. Legal Standard for a Motion to Dismiss

■ Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, defendants move to dismiss all counts for failure to state a claim upon which relief can be granted. Defendant Rollnick joins in the motion, and moves on his own behalf to dismiss and to strike certain portions of the amended complaint. In considering defendants' motion to dismiss, the Court must presume that the plaintiff's allegations are true, and grant the motion only if it appears "beyond doubt" that the plaintiff can prove no set of facts entitling her to relief. *Sun Savings & Loan Assoc. v. Dierdorff*, 825 F.2d 187, 191 (9th Cir.1987); *Federal Sav. & Loan Ins. Corp. v. Musacchio*, 695 F.Supp. 1053, 1058 (N.D.Cal.1988). Motions to dismiss will therefore be viewed with disfavor under this liberal standard. *Intake Water Co. v. Yellowstone River Compact Comm.*, 590 F.Supp. 293 (D.C. Mont.1983), *aff'd*, 769 F.2d 568 (9th Cir.), *cert. denied*, 476 U.S. 1163, 106 S.Ct. 2288, 90 L.Ed.2d 729 (1985). A complaint may be dismissed as a matter of law for two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable theory. 2A J. Moore, Moore's Federal Practice ¶ 12.08 at 2271 (2d ed. 1982), *cited in Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533–34 (9th Cir.1984). To dismiss, "it must appear to a certainty that the plaintiff would not be entitled to relief under any set of facts that could be proved." *Wool v. Tandem Computers Inc.*, 818 F.2d 1433, 1439 (9th Cir.1987).

### B. Class Period

In her Amended Complaint, plaintiff seeks to extend the class period to June 5, 1989, the day of Pyramid's second adverse announcement concerning its financial health, and almost eleven weeks after Pyramid's March 22 disclosure to securities analysts. The class period set forth in the original complaint was between October 31, 1988 and March 23, 1989.

The parties are currently submitting briefs to this court regarding plaintiff's motion for class certification, in preparation for this court's upcoming hearing on the class certification issue. For this reason, we decline now to decide the question of whether the enlarged class period fulfills the requirements of Rule 23 of the Federal Rules of Civil Procedure, and whether Marjorie Alfus is a suitable class representative for this new class. For purposes of the instant order, therefore, we will employ the class period as originally set forth and approved by this court (October 31, 1988–March 23, 1989).

### C. Section 10(b) and Rule 10b–5

As we noted in our March 30, 1990 order, Rule 10b–5, enacted under Section 10(b), makes it unlawful "[t]o make any untrue statement of fact or omit to state a material fact necessary to make the statements made, in light of all the circumstances in which they were made, not misleading." 17 C.F.R. § 240.10b–5. The Supreme Court has set forth two basic prerequisites for a cause of action predicated upon Rule 10b–5. First, the plaintiff must show that the statements were misleading as to a material fact. *Basic, Inc. v. Levinson*, 485 U.S. 224, 108 S.Ct. 978, 986, 99 L.Ed.2d 194 (1988). Second, there must exist a legally cognizable duty to disclose corporate information. *Id.* 108 S.Ct. at 987 n. 17; *Roeder v. Alpha Industries, Inc.*, 814 F.2d 22, 26 (1st Cir.1987).

### 1. *Materiality and the Duty to Disclose*

Plaintiff, in her original complaint, cited several instances in which statements were allegedly misleading as to a material fact. The announcements documented the healthy financial results of the previous fiscal periods, attributed to "strong demand for our products by commercial customers," Complaint ¶ 21 (citing January 17, 1989 press release), and highlighted these announcements with promises to "enhance our leadership position in the high-performance commercial open systems market." The complaint also cited an announcement by securities analysts Goldman Sachs, which recommended Pyramid stock as a "buy" and stated that it believed its (Goldman Sachs') earning "estimates may prove conservative ..." Complaint ¶ 26.

■ In our previous order, this court found that favorable past financial results did not imply future growth or success, and such an inference could not be drawn. *Alfus*, 745 F.Supp. at 1516 (citing *Caspary v. Louisiana Land & Exploration Co.*, 579 F.Supp. 1105 (S.D.N.Y.1983, *aff'd*, 725 F.2d 189 (2d Cir.1984)). Accurately reported data showing the historical growth record of a company does not create a misleading impression of future growth. *Weinberger v. Jackson*, No. C–83–20411–RPA, slip op. at 3 (N.D.Cal. Feb. 17, 1987). "It strains credulity to think that truthful, objective statistics concerning a company's prior performance and revealing a decrease in its growth rate, serve to reinforce what Plaintiff characterizes as a false image of the company's growth." *Schwartz v. Novo Industri A/S*, 658 F.Supp. 795, 798 (S.D.N.Y. 1987).

Where forecasts are made, however, liability may be premised on false and misleading projections, as such forecasts may be regarded as "facts" within the meaning of Rule 10b–5. *Marx v. Computer Sciences Corp.*, 507 F.2d 485, 489 (9th Cir. 1974) (citing *G & M, Inc. v. Newbern*, 488 F.2d 742 (9th Cir.1973)). In the Amended Complaint, plaintiff cites numerous additional statements made during the class period concerning the financial health of Pyramid, including various magazine and newspaper articles, press releases, and analyst reports. Amended Complaint, ¶¶ 27–52. In these statements, several forecasts are made of Pyramid's future financial performance in the upcoming fiscal periods. For example, on October 21, 1988, Goldman Sachs allegedly issued a research report on Pyramid, "based in large part on information provided to Goldman Sachs by defendants ..." The report stated that "[f]or fiscal 1989, we forecast total revenue growth of 40 percent, to $110–120 million. We view this as a conservative estimate ..." Amended Complaint ¶ 30. On October 31, 1988, "defendants caused Pyramid to issue" a press release in which Richard Lussier, Chairman, President and Chief Executive Officer of Pyramid reportedly said that growth in revenues and profitability, and the accompanying positive cash balance "leaves us well positioned to fund our growth in fiscal 1989 and beyond." *Id.* ¶ 31. Plaintiff goes on to cite a November 29, 1988 article appearing in *Investor's Daily*, which stated that "John Dean, an analyst from Montgomery Securities who followed the company, said 'For the next two years I expect strong growth and strong products from Pyramid.'" *Id.* ¶ 33. The article was allegedly "based in large part on information provided to Dean by defendants and ... reviewed by certain of Pyramid's officers at or about the time they were published." *Id.* ¶ 33. On January 20, 1989, Goldman Sachs issued another research report on Pyramid, authored by an analyst who followed Pyramid, "which was based in large part on information provided by defendants ..." The report allegedly forecast fiscal 1989 earnings per share of $1.25–$1.27, total revenues of $112.5 million, and continually increasing profit margins on a quarter-to-quarter basis. *Id.* ¶ 36. "We forecast revenue growth over the next three years to be 30 percent–40 percent annually." This report also commented on Pyramid's new MIServer product line, which would reportedly become available in February, 1989. "The new products should contribute modestly to revenues in the March quarter, and by year end should constitute nearly 100 percent of

shipments. We expect the products to be well-received and anticipate little transition risk." *Id.* ¶ 36. On February 13, 1989, Pyramid's Corporate MIServer was introduced. On February 14, 1989, Goldman Sachs issued a "Note" and Research Brief, each stating "[w]e continue to estimate fiscal (September) 1989 earnings of $1.25 and fiscal 1990 earnings of $1.55. We believe our estimates may prove to be conservative ..." *Id.* ¶ 40. Both reports were allegedly "based on information provided to Goldman Sachs by defendants ..." *Id.*

█ Forecasts of this type are affirmative statements, and are actionable under 10b–5. Because an "earnings forecast is a shorthand description of the general financial well-being of a company; it creates an influential impression of the condition of the company in the eyes of the investing public." *Marx,* 507 F.2d at 492. Such forecasts create a duty to disclose materially misleading information, or remedy misleading omissions. *Id.* at 491–92.

However, defendants urge that the statements cited, made by third parties, are not sufficient to place liability upon defendants in this case. "[P]laintiff's allegations as to statements by third parties are insufficient to raise any inference of fraud by these defendants." Defendants' Memorandum in Support of Motion to Dismiss, at 11. A company who merely examines and comments upon analysts' reports and other articles may be under no obligation to correct errors in the analysts' statements. *Elkind v. Liggett & Myers, Inc.,* 635 F.2d 156, 163–64 (2d Cir.1980). Such comments and suggestions as to factual and descriptive matters in reports "[do] not compel the conclusion that this conduct carried a suggestion that the analysts' projections were consistent with [the company's] internal estimates." *Id.* at 163. Thus, the company assumes no duty to disclose its own forecasts or to warn the analysts that their optimistic view was not shared by the company. *Id.*

However, where a company undertakes to pass on earnings forecasts through analysts' reports, it must correct figures that are incorrect. *Id.* at 164. If the company places its imprimatur, expressly or impliedly, on analysts' projections, such a duty to disclose may arise. *Id.* at 163. Plaintiff alleges that defendants provided information to the securities analysts, upon which the reports were based. Whether the forecast information was in fact provided by defendants, so that defendants had a duty to disclose materially misleading facts or omissions, is a question for the trier of fact. Plaintiff has made an allegation with sufficient particularity that is actionable under the securities law for the original class period (October 31–March 23, 1989), and thus has satisfactorily amended her complaint to overcome defendants' motion to dismiss on the grounds of lack of materiality and a duty to disclose.

## 2. *Material Omissions*

█ Plaintiff has likewise adequately alleged that the financial projections were made while defendants were in possession of contradictory information. Whether failure to disclose company problems is an omission causing statements to be misleading is now a factual determination left to the jury. *Marx v. Computer Sciences Corp.,* 507 F.2d 485, 492 (9th Cir.1974) Plaintiff maintains, among other things, that defendants failed to disclose: (a) that Pyramid's attempt to complete the financial development, manufacture and initial marketing of the Corporate MIServer family of products was plagued by serious and persistent problems, such that this new generation product was suffering significant completion and manufacturing delays, would not be introduced in either the second or third quarters of fiscal 1989 and thus would provide no significant revenues in the near term, while at the same time Pyramid's existing products, including its earlier general products, were suffering from flattening sales and declining profit margins as its customers awaited the availability of the Corporate MIServer; (b) that Pyramid took a major risk because management had added significant fixed overhead and made other firm financial commitments to support substantially expanded and enlarged sales of its new Corporate MIServer products, and had initiated

new operations and incurred expenses in anticipation of obtaining revenues from sales of the new products in the near term, which if not achieved would result in a reduction in the profitability of the company; (c) that Pyramid faced the threat of near term eroding sales and profit margin, because customers slowed purchases of existing products while waiting for the Corporate MIServer to become available; (d) that Pyramid was suffering from problems in controlling its sharply increasing expenses resulting from its new product development activities such that its overhead and other firm financial commitments were escalating more rapidly than planned and were adversely affecting Pyramid's actual performance compared to the levels previously internally forecast or planned; (e) that Pyramid was suffering from significant management failures, shortcomings and disagreements at the highest levels of its most important operations resulting from the failure to timely introduce the new product; and (f) that Pyramid was suffering sustained and serious problems in completing the final design and initial production and sales of its Corporate MIServer product due to design and engineering errors and manufacturing problems, and was incurring substantially higher than anticipated costs in completing the final development, initial manufacturing and marketing of this product. Amended Complaint ¶ 53. These statements, if true, may contradict the forecast announcements cited above. We again decline to make the factual determination of whether the forecasts can be attributed to defendants and whether the company suffered from the problems listed above. However, assuming the existence of scienter, plaintiff has sufficiently alleged that defendants made such forecasts and omitted material facts such that an action under Rule 10(b) exists for the class period ending March 23, 1989.

### 3. *Scienter*

██ As noted in our March 30, 1990 order, to sustain a Rule 10b–5 claim, a plaintiff must show that the defendant acted with scienter, the intent to deceive, manipulate or defraud. *Ernst & Ernst v. Hoch-felder*, 425 U.S. 185, 193–94 n. 12, 96 S.Ct. 1375, 1381 n. 12, 47 L.Ed.2d 668, *reh'g denied*, 425 U.S. 986, 96 S.Ct. 2194, 48 L.Ed.2d 811 (1976). Scienter can be shown through reckless behavior, as well as knowledge. Where the actor presents a danger of misleading buyers or sellers by an extreme departure from the standards of ordinary care, which is either known to the defendant or is so obvious that the actor must have been aware of it, scienter is found. *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564 (9th Cir.1990), *reh'g denied*, 1990 WL 139583, 1990 U.S.App. LEXIS 19892 (Nov. 13, 1990).

██ In our previous order, we found that Pyramid's advice to an analyst who was inquiring whether his earnings estimates were accurate, that he should revise his estimates downward because they were too optimistic, negates any inference that Pyramid acted with intent to defraud. *Alfus*, 745 F.Supp. at 1520 (citing *Goldberg v. Freedom Federal Savings Bank*, No. 88–C–4787, slip op. at 9, 1989 WL 8503 (N.D. Ill. Jan. 31, 1989); *Hayden Leason v. Actrix Computer Corp.*, No. C–84–20108, slip op. at 2–3 (N.D.Cal. Jan. 24, 1989) ("It is implausible that a person bent on fraud" would provide adverse information to investors)). Plaintiff was given thirty days leave to replead her claims with specificity. *Id.* Plaintiff has not, in her amended complaint, increased the specificity of the allegations of scienter. However, upon reconsideration of the allegations made by plaintiff in the original complaint, and repeated in the amended complaint, we must decide that despite the nullifying effect of the negative disclosure, scienter has been sufficiently shown for the class period ending March 23, 1989, so that defendants' motion to dismiss cannot be granted on these grounds.

Plaintiff has alleged unusual insider trading activity during the class period. "Insider trading in suspicious amounts or at suspicious times is probative of bad faith and scienter." *In re Apple Computer Securities Litigation*, 886 F.2d 1109 (9th Cir. 1989), *cert. denied*, — U.S. ——, 110 S.Ct. 3229, 110 L.Ed.2d 676 (1990) (citing *Gold-*

*man v. Belden,* 754 F.2d 1059, 1070 (2d Cir.1985)). In the *Apple Computer* litigation, plaintiffs pointed to evidence that defendants collectively sold about eight percent of their Apple holdings valued at roughly $84 million during the class period. *In re Apple Computer Securities Litigation,* 886 F.2d at 1117. In the instant matter, plaintiff Alfus claims that certain of the individual defendants collectively sold 271,459 shares during the class period, for a total of over $4.5 million.[1] Amended Complaint ¶ 16.

The *Apple Computer* court noted that cases base a finding of bad faith on insider trades involving trades in amounts dramatically out of line with prior trading practices, at times calculated to maximize personal benefit from undisclosed inside information. *Apple,* 886 F.2d at 1117 (citations omitted). Sophisticated investors would certainly know that heavy sales too far removed from the adverse announcement would "deprive them of much of the value of their 'false' optimism." *Id.* In the instant matter, plaintiff alleges insider stock sales during the days, weeks and months preceding the first announcement calling for financial caution. Amended Complaint ¶ 16. We find this probative of bad faith.

In our previous order, we decided that the voluntary disclosure of adverse information precluded the probative value of the allegedly improper insider trading. Upon reconsideration, however, we must now conclude that the question of whether the probative value of the voluntary disclosure outweighs that of the evidence of insider trading, is better left for the trier of fact. Thus, since we cannot find that it is "beyond doubt" that "the plaintiff would not

be entitled to relief under any set of facts that could be proved," *Sun Savings & Loan Assoc. v. Dierdorff,* 825 F.2d at 191; *Wool v. Tandem Computers, Inc.,* 818 F.2d at 1439, we must deny defendants' motion to dismiss the allegations of violation of Section 10(b) and Rule 10b–5 of the Amended Complaint, for the class period ending March 23, 1989.

**D. Standing**

■ An action under Section 10(b) requires that allegedly misleading statements be made "in connection with" purchases of the company's stock. *See Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 733, 95 S.Ct. 1917, 1924, 44 L.Ed.2d 539 (1975). Defendants argue that plaintiff Alfus cannot represent the class beyond January 9, 1989, the date upon which Alfus made her final purchase of Pyramid stock, on the ground that she lacks standing under Section 10(b).

Misleading statements and omissions made after a plaintiff's purchase of stock normally cannot form the basis of that individual's Section 10(b) action because such acts were not performed "in connection with" plaintiff's purchase. *Blue Chip Stamps,* 421 U.S. at 733, 95 S.Ct. at 1924; *Williams v. Sinclair,* 529 F.2d 1383, 1389, n. 10 (9th Cir.1975), *cert. denied,* 426 U.S. 936, 96 S.Ct. 2651, 49 L.Ed.2d 388 (1976). Individuals who purchase prior to the performance of such allegedly fraudulent acts lack standing to complain about later misleading statements "as they neither purchased nor sold shares in reliance upon the alleged misrepresentation or concealment." *Williams v. Sinclair,* 529 F.2d at 1389.

---

**1.** Defendant Lussier, Chairman of the Board of Directors ("Board"), President and CEO of Pyramid, allegedly owned 177,639 shares of common stock amounting to approximately 2.2 percent of that outstanding. He allegedly sold 20,-000 shares during the class period.

Defendant Dolinar, Executive Vice President and member of the Board of Pyramid, allegedly owned as much as approximately 319,428 shares of common stock amounting to 3.9 percent of that outstanding, and sold 196,100 shares during the class period.

Defendant Shellooe, Executive Vice President of Pyramid, allegedly owned as much as approx-

imately 32,841 shares of common stock and sold 22,361 during the class period.

Defendant Rollnick, member of the Board of Pyramid, and sole member of its Audit Committee, allegedly owned approximately 150,439 shares of common stock, amounting to approximately 1.8 percent of that outstanding, and sold 31,998 shares during the class period.

Defendant Tolchin, Vice President of Pyramid, owned approximately 1,248 shares of common stock and sold 1,000 during the class period. Amended Complaint ¶ 15.

Defendants maintain that, since plaintiff purchased her stock on January 9, 1989, before the allegedly fraudulent statements in paragraphs 35 to 50 of the Amended Complaint were made, she cannot assert a Section 10(b) claim with respect to those statements and they must be dismissed from the complaint. Defendants' Memorandum in Support of Motion to Dismiss, at 21.

Rule 23 of the Federal Rules of Civil Procedure provides that "one or more members of a class may sue or be sued as representative parties on behalf of all" if, among other things, the claims or defenses of the representative parties are typical of the claims or defenses of the class. Class representatives must be members of the class, and in order to be a class member, the representative must have standing to bring the suit on her own; that is, the class representative must have been injured and have a claim typical of all class members. *O'Shea v. Littleton*, 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974); *Warth v. Seldin*, 422 U.S. 490, 499–502, 95 S.Ct. 2197, 2205–2207, 45 L.Ed.2d 343 (1975); *Gabrielsen v. Banctexas Group, Inc.*, 675 F.Supp. 367, 371 n. 3 (N.D.Tex. 1987) ("A person simply cannot represent a class of which he is not a member; he cannot predicate standing on injury which he does not share").

However, Rule 23 only requires that the representative's claim be typical of the claims or defenses of the class; it does not require that the class representative have standing for each of these claims. It is simply that an aspiring class representative "must be a member of the class and suffer injury common to the class". *Senter v. General Motors Corp.*, 532 F.2d 511, 518 (6th Cir.1976), *cert. denied*, 429 U.S. 870, 97 S.Ct. 182, 50 L.Ed.2d 150 (1976). While the representative must be a member with standing, the Alfus class is not confined to that period preceding Alfus' final purchase of Pyramid stock; carving out such a period would be arbitrary. Reducing the class period according to Alfus' purchase date would imply "that only someone who bought on the last day of a class period would be able to bring an action based on"

the logical dates alleged in the Amended Complaint. *Nicholas v. Poughkeepsie Savings Bank/FSB*, Fed.Sec.L.Rep. (CCH) ¶ 95,606 at 97,840–41, 1990 WL 145154 (S.D.N.Y. Sept. 27, 1990). Rather, Alfus is representative of those purchasers who acquired their stocks in the period between the date that Pyramid reported its fiscal 1988 report, and March 23, 1989, the day after Pyramid made its first adverse announcement to the securities analysts, causing stock prices dramatically to fall. Since Alfus alleges that she was injured during the period in a manner typical of all stockholders who purchased in that same period, the standing requirement is fulfilled, and Alfus is a suitable representative of the named class.

### E. The Conspiracy Claims

■ To state a claim for conspiracy, a plaintiff must plead both an agreement to participate in an unlawful act, and an injury caused by an unlawful overt act performed in furtherance of the agreement. *Alfus*, 745 F.Supp. at 1520 (citing *Roberts v. Heim*, 670 F.Supp. 1466, 1483–84 (N.D. Cal.1987), *aff'd in part and rev'd in part on other grounds sub nom.*, *Roberts v. Peat, Marwick, Mitchell & Co.*, 857 F.2d 646 (9th Cir.1988)).

In *Roberts*, the court held that because plaintiffs stated a claim under Section 10(b), plaintiffs clearly alleged an injury caused by an unlawful act. *Roberts*, 670 F.Supp. at 1484. Likewise, in this case, plaintiff in her amended complaint has stated a claim under Section 10(b) and thus has fulfilled the second prong of the conspiracy requirements.

■ However, with regard to the first prong, plaintiff has not pled with sufficient particularity that acts were performed in furtherance of a scheme to defraud. In civil conspiracy actions, courts insist upon a higher level of specificity than is usually demanded of other pleadings. This insistence upon a higher level of specificity may result from the frequent presence of fraud as a part of plaintiff's claim, which brings the complaint under Rule 9(b) of the Feder-

al Rules of Civil Procedure, and which requires that the circumstances constituting fraud be stated with particularity. Fed.R. Civ.P. 9(b); *Alfus*, 745 F.Supp. at 1521; *In re Thortec Securities Litigation*, Fed.Sec. L.Rep. (CCH) 94,330, 1989 WL 67429 (N.D. Cal. Jan. 25, 1989) (allegations of conspiracy must be pleaded with particularity). To survive a motion to dismiss, plaintiff must allege with sufficient factual particularity that defendants reached some explicit or tacit understanding or agreement. *Roberts*, 670 F.Supp. at 1484 (proof of a conspiracy does not require a showing of an explicit agreement; a demonstration of a tacit agreement is enough); *see also Halberstam v. Welch*, 705 F.2d 472, 479 (D.C. Cir.1983). It is not enough to show that defendants might have had a common goal unless there is a factually specific allegation that they directed themselves toward this wrongful goal by virtue of a mutual understanding or agreement. *Roberts*, 670 F.Supp. at 1484.

In our March 30, 1990 order, we dismissed plaintiff's allegations of conspiracy for failure to state a claim, and granted her leave to plead the existence of an agreement and specific facts concerning the agreement. *Alfus*, 745 F.Supp. at 1521. In the amended complaint, plaintiff purports to have corrected this deficiency. She alleges that the individual defendants were Pyramid insiders who were privy to proprietary business information, and that they operated as a collective entity in receiving information about the company, and conducting Pyramid business through formal resolutions. Amended Complaint ¶¶ 59–60. The individual defendants also allegedly acted collectively to approve and issue periodic reports to the SEC and to Pyramid shareholders, even though the defendants were aware of the allegedly false and misleading nature of these statements. *Id.* ¶¶ 60–61.

These allegations, however, are insufficient to allege a tacit understanding or agreement. "There is no authority for inferring conspiratorial conduct from the fact of corporate position or responsibility." *In re Thortec Securities Litigation*, Fed.Sec. L.Rep. (CCH) ¶ 94,330 at 92,160 (N.D.Cal.

Jan. 25, 1989). Claims that each defendant performed a wrongful act cannot, by itself, create an inference of a conspiratorial agreement. *Roberts*, 670 F.Supp. at 1485. For these reasons, we must find that plaintiff has failed to amend her complaint to plead with the requisite heightened particularity that the individual defendants acted with explicit or tacit agreement to commit an act in furtherance of an agreement to commit violations of our securities laws. Accordingly, plaintiff's claims of conspiracy are dismissed with prejudice.

**F. Insider Trading Claims and the Foreign Corrupt Practices Act**

In our previous order, we dismissed plaintiff's insider trading claims for lack of standing because plaintiff did not allege that she traded contemporaneously with any of the defendants. *Alfus*, 745 F.Supp. at 1521–23. Although plaintiff does not directly assert this claim in the Amended Complaint as a separate cause of action, defendants maintain that plaintiff implies the cause of action by requesting the relief of disgorgement of insider trading profits by individual defendants.

Plaintiff admits that no separate cause of action for insider trading is intended. Plaintiffs' Memorandum in Opposition to Motion to Dismiss, at 27. Accordingly, the prayer for disgorgement of insider trading profits is stricken from the Amended Complaint.

Likewise, plaintiff concedes that any reference to the Foreign Corrupt Practices Act is set forth for the purpose of establishing scienter, and is not a separate claim. Thus, we dismiss any claims of a violation of this Act for failure to state a claim.

**G. Item 303 of Regulation S–K**

 In paragraph 56 of the Amended Complaint, plaintiff alleges that Pyramid's annual and quarterly reports were "materially misleading" because they violated Item 303 of Regulation S–K (17 C.F.R. § 229.303) in failing to disclose "the known adverse facts about Pyramid." Amended Complaint ¶ 56. Plaintiff apparently main-

tains that the company had a duty to disclose significant known trends or uncertainties under Rule 10b–5, pursuant to Item 303.

This court continues to find that defendants did not violate Rule 10b–5 by failing to comply with Item 303. The Securities and Exchange Commission stated in a May 1989 release interpreting Item 303 that the Item's standard of disclosure (i.e. reasonably likely to have material effect),

> governs the circumstances in which Item 303 requires disclosure. The probability/magnitude test for materiality approved by the Supreme Court in *Basic, Inc. v. Levinson*, [485 U.S. 224,] 108 S.Ct. 978 [99 L.Ed.2d 194] (1988), is inapposite to Item 303 disclosure.

SEC Release No. 33–6835, 6 Fed.Sec.L.Rep. (CCH) ¶ 73,193, n. 13 at 62,843 (May 18, 1989). Thus, demonstration of a violation of the disclosure requirements of Item 303 does not lead inevitably to the conclusion that such disclosure would be required under Rule 10b–5. Such a duty to disclose must be separately shown. Accordingly, plaintiff's claims of violations of Item 303 are dismissed.

## CONCLUSION

For all of the reasons discussed above, defendants' motion to dismiss plaintiff's Amended Complaint is denied for the class period October 31, 1988 to March 23, 1989, except that:

(1) Plaintiff's claims of conspiracy are dismissed with prejudice against all defendants, including defendant Rollnick;

(2) Plaintiff's separate causes of action for insider trading and violations of the Foreign Corrupt Practices Act are dismissed; plaintiff's prayer for the disgorgement remedy is stricken from the complaint;

(3) Any allegations in the Amended Complaint of violations of Item 303 of Regulation S–K are dismissed.

IT IS SO ORDERED.