David GROSS, Plaintiff, Appellant,

v.

SUMMA FOUR, INC., Barry R. Gorsun, James J. Fiedler, John A. Shane, William M. Scranton, and Robert A. Degan, Defendants, Appellees.

No. 96–1088.

United States Court of Appeals, First Circuit.

Heard May 8, 1996.

Decided Aug. 12, 1996.

Arthur R. Miller, with whom Lee S. Shalov, Milberg Weiss Bershad Hynes & Lerach LLP, Jules Brody, Mark A. Levine, Stull Stull & Brody, Edward L. Hann, McLane, Graf, Raulerson & Middleton, Joseph H. Weiss, and Weiss & Yourman, New York City, were on brief for appellant.

Peter J. Macdonald, with whom Donald J. Williamson and Hale and Dorr, Boston, MA, were on brief for appellees.

Before STAHL, Circuit Judge,
CAMPBELL, Senior Circuit Judge, and
LYNCH, Circuit Judge.

STAHL, Circuit Judge.

Investor David Gross appeals from the district court's dismissal of his securities fraud claim against Summa Four, Inc., its president, and other Summa Four officers and directors.[1] Gross claims that Summa Four committed "fraud on the market" by making a series of public statements from January to July 1994 that were either materially misleading in and of themselves, or incomplete and misleading due to the omission of materially relevant facts. Gross further complains that Summa Four improperly overstated its revenue during the same time period. After careful review, we affirm the district court's dismissal of Gross's claims.

## I.

### Background

Summa Four is a Delaware corporation with its principal place of business in Manchester, New Hampshire. It develops and manufactures advanced-technology switching and signaling systems for use in telecommunications networks, which it markets and distributes to clients worldwide.

On September 23, 1993, Summa Four successfully completed an initial public offering ("IPO") of its common stock. The individual defendants sold a portion of their shares into the IPO (at a price of $17 per share), but remained significant shareholders following the offering. As provided in a "lock-up" agreement with the underwriter, the individual defendants were prohibited from selling any retained shares in the company for 180 days following the date of the offering. In late February 1994, however, the individual defendants obtained special permission from the underwriter to sell, and did sell, over 130,000 shares of Summa Four stock at an average market price in excess of $38 per share.

Gross, who purports to sue on behalf of himself and all other investors similarly situated, purchased 200 shares of Summa Four stock in late May 1994 at a price of approximately $27.50 per share. On July 5, 1994 (the closing date of the class period),[2] Summa Four's stock price fell from $22.25 to $11.75 per share following the company's announcement that its expected results for the first quarter of fiscal year 1995 (ending June 30, 1994) would fall short of earlier projections. Shortly thereafter, Summa Four terminated defendant James Fiedler who had served as its president throughout the class period.

---

1. The individual defendants are Barry Gorsun, current president, CEO and Chairman of the Board; James J. Fiedler, president and director from July 1993 through July 1994; John A. Shane, director since 1976; William M. Scranton, director since 1976; and Robert A. Degan, director since 1984. Unless otherwise indicated we will refer to all defendants collectively as "Summa Four" or "the company."

2. The purported "class period" extends from January 18, 1994, to July 5, 1994. The district court never certified the class.

## A. Summa Four's Public Statements

From January to July 1994, Summa Four issued several public statements touting the company's performance and profitability. In the complaint, Gross relies on excerpts from three such statements to establish his claims of securities fraud. The first two excerpts are taken from press releases dated January 18 and May 3, 1994, that accompanied the release of Summa Four's results for the third and fourth quarters of its 1994 fiscal year. The third excerpt is taken from a June 29, 1994, letter to the shareholders from Summa Four's then president James Fiedler. The June 29 letter was sent in advance of the end of the first quarter of Summa Four's 1995 fiscal year. The relevant portions of the three statements are quoted below.

1. January 18, 1994, press release:

Competition at all levels and alternative technologies caused by divestiture in the U.S. and privatization in other markets are fueling growth for new customized services. We are also seeing *increased demand for our SDS distributed switch* in a number of international markets including China, Chile and Columbia where there is rapid development in infrastructure.... The SDS distributed switch is becoming the platform of choice for rapidly developing and deploying network-based enhanced services worldwide.

2. May 3, 1994, press release:

In the fourth quarter [ending March 31, 1994], the Company *received significant orders* from AT & T, McCaw, Sprint, GTE, Unisys, and IBM to address a broad range of applications.... These new orders were for both new and existing applications, domestically and internationally.

3. June 29, 1994, letter to shareholders:

We are pleased to report to you that fiscal year 1994, ended March 31, 1994, was a watershed year in Summa Four's history. It was a year in which we strengthened our competitive position, recorded our eighth consecutive increase in quarterly revenues, and generated record net income.

*Our strong financial performance* is primarily the result of our initiatives in the highly competitive long distance market.... Summa Four is committed to maintaining its worldwide leadership position in the public network-based distributed switch market. We have preeminent customers worldwide, broad-based strategic distribution channels, public network-certified products, *a strong financial position,* and an experienced management team.

Gross alleges that, during the class period, Summa Four possessed internal reports, documents, and board meeting minutes revealing that the company was experiencing declining growth in revenue and earnings, delayed orders, significant increases in expenses, and difficulties in its international operations. Specifically, in order to support his claims that the three public statements were materially false or misleading, Gross relies on certain internal "Flash Reports" and "Monthly Operating Reports" for the months of January through April 1994, and recorded minutes from board and internal operation meetings held in May and June 1994. As we progress with our analysis, we will discuss in more detail the content of these internal documents.

## B. The Present Lawsuit

On July 12, 1994, shortly after Summa Four's announcement of its expected results for the first quarter of fiscal year 1995 and the ensuing sudden decline in Summa Four's stock price, Gross filed this securities fraud action in the New Hampshire federal district court. Gross purported to bring the complaint on behalf of all investors who purchased Summa Four stock during the class period. Following Summa Four's initial motion to dismiss, the district court granted Gross limited discovery. Upon completion of that discovery, Gross amended his complaint.

Subsequently, Summa Four moved to dismiss the amended complaint. After briefing and oral argument, the district court granted the motion, rejecting all of Gross's claims. The court disagreed with Gross that the excerpted portions of the statements could be viewed as affirmative misrepresentations, stating that:

A reasonable person could not infer from the pleaded acts that demand for [Summa Four's products] was no longer growing, that significant orders had not been received from major corporations, or that the company was not in a "strong financial position" simply because it did not meet its short-term budget projections, its orders for one month were lower than expected, and its international operations were in a state of disarray.

The court also rejected Gross's claim that the statements were misleading by omission. The court noted that, while many of the facts Gross alleged to support that allegation "might have been important to the reasonable investor," they were not sufficient to indicate that the challenged statements were so incomplete as to be misleading. The court further rejected Gross's final claim that Summa Four had overstated its revenue, reasoning that the allegations on which Gross relied did not reasonably support the claim. Gross now appeals.[3]

## II.

### Discussion

Gross contends that the district court erred in dismissing his claims. He argues that the amended complaint adequately alleged that Summa Four had a duty, which it breached, to disclose material nonpublic information in its possession necessary to make its public statements not materially misleading. Gross also contends that Summa Four improperly overstated its revenue and earnings during the class period by not following generally accepted accounting principles ("GAAP"). After discussing the standard of review and the relevant securities law, we address each issue in turn.

### A. Standard of Review

We review the district court's dismissal of Gross's amended complaint *de novo*, taking all well-pleaded allegations as true and giving Gross the benefit of all reasonable inferences. *See Roeder v. Alpha Indus., Inc.*, 814 F.2d

22, 25 (1st Cir.1987). Nonetheless, because Gross alleges fraud, he is subject to the heightened pleading requirements of Fed. R.Civ.P. 9(b), which provides that "[i]n all averments of fraud or mistake, the circumstances constituting the fraud or mistake shall be stated with particularity."

■ Rule 9(b) sets a demanding standard in order to "minimize the chance that a plaintiff with a largely groundless claim will bring a suit and conduct extensive discovery in the hopes of obtaining an increased settlement, rather than in the hopes that the process will reveal relevant evidence." *Romani v. Shearson Lehman Hutton*, 929 F.2d 875, 878 (1st Cir.1991) (internal quotations and citations omitted). We have been especially strict in demanding adherence to Rule 9(b) in the securities context, *id.*, expressly stating that

"general averments of defendants' knowledge of material falsity will not suffice. Consistent with Fed.R.Civ.P. 9(b), the complaint must set forth specific facts that make it reasonable to believe that the defendant[s] knew that a statement was materially false or misleading. The rule requires that the particular times, dates, places, or other details of the alleged fraudulent involvement of the actors be alleged."

*Lucia v. Prospect St. High Income Portfolio*, 36 F.3d 170, 174 (1st Cir.1994) (quoting *Serabian v. Amoskeag Bank Shares, Inc.*, 24 F.3d 357, 361 (1st Cir.1994)).

■ Furthermore, we have consistently held that a securities plaintiff does not satisfy the requirements of Rule 9(b) merely by pleading " 'fraud by hindsight.' " *Greenstone v. Cambex Corp.*, 975 F.2d 22, 25 (1st Cir. 1992) (quoting *Denny v. Barber*, 576 F.2d 465, 470 (2d Cir.1978)). In other words, "a general averment that defendants 'knew' earlier what later turned out badly" does not convey the necessary particularity that Rule 9(b) requires. *Id.* In addition, the heightened pleading requirement of Rule 9(b) applies even when the fraud relates to matters peculiarly within the defendant's knowledge.

---

**3.** The amended complaint also included claims regarding alleged misstatements of future performance and alleged misstatements by third-party analysts. Gross has expressly abandoned those claims on appeal.

*Lucia,* 36 F.3d at 174; *Romani,* 929 F.2d at 878.

## B. Requirements of a 10b–5 Claim

Gross bases his fraud claims on alleged violations of § 10(b) of the Securities Exchange Act and the Securities and Exchange Commission's Rule 10b–5 promulgated thereunder. 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b–5. Together these provisions prohibit any person, directly or indirectly, from committing fraud in connection with the purchase or sale of securities. *Id.; Shaw v. Digital Equip. Corp.,* 82 F.3d 1194, 1217 (1st Cir.1996). To state a cause of action under § 10(b) and Rule 10b–5, a plaintiff must plead, with sufficient particularity, that the defendant made a false statement or omitted a material fact, with the requisite scienter, and that the plaintiff's reliance on this statement or omission caused the plaintiff's injury. *Shaw,* 82 F.3d at 1217; *see also San Leandro Emergency Medical Group Profit Sharing Plan v. Philip Morris Cos.,* 75 F.3d 801, 808 (2d Cir.1996). A misrepresented or omitted fact will be considered material only if a reasonable investor would have viewed the misrepresentation or omission as "having significantly altered the total mix of information made available." *Basic, Inc. v. Levinson,* 485 U.S. 224, 232, 108 S.Ct. 978, 983, 99 L.Ed.2d 194 (1988).

By itself, however, Rule 10b–5, does not create an affirmative duty of disclosure. Indeed, a corporation does not commit securities fraud merely by failing to disclose all nonpublic material information in its possession. *Roeder,* 814 F.2d at 26 (citing *Chiarella v. United States,* 445 U.S. 222, 235, 100 S.Ct. 1108, 1118, 63 L.Ed.2d 348 (1980)); *see also Shaw,* 82 F.3d at 1202. The corporation must first have a duty to disclose the nonpublic material information before the potential for any liability under the securities laws emerges. *Roeder,* 814 F.2d at 26. Such a duty may arise if, *inter alia,* a corporation has previously made a statement of material fact that is either false, inaccurate,

incomplete, or misleading in light of the undisclosed information. *See id.* at 27.[4]

Thus, "[w]hen a corporation does make a disclosure—whether it be voluntary or required—there is a duty to make it complete and accurate." *Id.* at 26. "This, however, does not mean that by revealing one fact about a product, one must reveal all others that, too, would be interesting, market-wise, but means only such others, if any, that are needed so that what was revealed would not be 'so incomplete as to mislead.' " *Backman v. Polaroid Corp.,* 910 F.2d 10, 16 (1st Cir.1990) (*en banc*) (quoting *SEC v. Texas Gulf Sulphur Co.,* 401 F.2d 833, 862 (2d Cir.1968) (*en banc*), *cert. denied,* 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969)). Furthermore, the fact that a company has reported accurately about past successes does not by itself burden the company with a duty to inform the market that present circumstances are less positive. *Shaw,* 82 F.3d at 1202; *Serabian v. Amoskeag Bank Shares, Inc.,* 24 F.3d 357, 361 (1st Cir.1994).

## C. Analysis

We turn first to Gross's claims that Summa Four's various public statements during the class period were either false and misleading in and of themselves or false and misleading by omission. We take the claims arising from the June 29 letter first, and then address the claims arising from the earlier January 18 and May 3 press releases. Finally, we turn to Gross's claim that, by employing improper accounting procedures, Summa Four overstated its revenue during the class period.

### 1. June 29 Letter

Gross complains that, given the letter's failure to disclose Summa Four's impending poorer-than-expected results for the first quarter of fiscal year 1995, its statements that the company had experienced a "strong financial performance" and was in "a strong financial position" are either patently

---

**4.** In *Roeder,* we also alluded to two other situations that could give rise to a duty to disclose material facts: (1) when an insider trades in the company's securities on the basis of nonpublic material information; (2) when a statute or regulation mandates disclosure. *See Shaw,* 82 F.3d at 1202 n. 3 (discussing *Roeder*).

false or clearly misleading by omission. Summa Four disputes this contention, arguing that both statements are completely borne out by the facts alleged in the amended complaint. Summa Four argues that the "strong financial performance" statement is a backward-looking statement referring to its record results in fiscal year 1994. Summa Four further adds that nothing in the amended complaint, *viz.*, allegations concerning its disappointing first quarter 1995 results, supports the inference that the company was not in a "strong financial position."

While the issues raised by the June 29 letter represent, perhaps, Gross's strongest claims, we need not choose between the parties' contrary positions. Regardless of the merits, because Gross purchased his stock on May 27, 1994, well before Summa Four issued the June 29 letter, he has no standing to complain about the statements included in the letter. *See Shaw*, 82 F.3d at 1222 (only individuals who purchased shares *after* allegedly misleading statement could have suffered a cognizable injury); *Roots Partnership v. Lands' End, Inc.*, 965 F.2d 1411, 1420 (7th Cir.1992) (similar). In other words, because Summa Four issued the letter after Gross had purchased his stock, the statements in the letter could not possibly have inflated the market price that he paid for those shares. *Roots Partnership*, 965 F.2d at 1420. Moreover, although Gross purports to bring a class action on behalf of all individuals who purchased Summa Four shares during the class period, he cannot maintain an action on behalf of class members to redress an injury for which he has no standing in his own right. *Id.* at 1420 n. 6; *see Britt v. McKenney*, 529 F.2d 44, 45 (1st Cir.) ("If none of the named plaintiffs may maintain action on their own behalf, they may not seek such relief on behalf of a class."), *cert. denied*, 429 U.S. 854, 97 S.Ct. 149, 50 L.Ed.2d 130 (1976); *see also Lewis v. Casey,* — U.S. —, — – —, 116 S.Ct. 2174, 2181–83, 135 L.Ed.2d 606 (1996).

### 2. *January 18 Press Release: False Statement of Current Facts*

Apart from the claims arising from the June 29 letter, Gross points to one statement excerpted from the January 18, 1994, press release as constituting a false statement of current facts. Gross contends that the amended complaint sufficiently alleged that Summa Four's statement that "We are seeing *increased demand* for our SDS distributed switch in a number of international markets including China, Chile and Colombia" is patently false and a violation of Rule 10b–5. We disagree.

■ Though Gross adamantly contends that the statement is false, the amended complaint provides little in the way of specific facts to support this contention. *See Greenstone*, 975 F.2d at 25 ("complaint must set forth specific facts that make it reasonable to believe that the defendant knew that a statement was materially false or misleading"); *see also Glassman v. Computervision Corp.*, 90 F.3d 617, 630 (1st Cir. 1996) (complaint failed to allege sufficient factual basis for claim that up-to-date information was ignored in setting offering prices). Indeed, when pressed by the district court on this very issue following the limited discovery, Gross's counsel conceded that the amended complaint failed to point to any "documents that expressly say that on January 18th or thereabouts that the [SDS] switch [was] experiencing declining orders." The only document contemporaneous to the January 18 press release that Gross cites to support his claim, a January 20 "Flash Report," made no comment on any product, or on any particular international market. At best, the January 20 "Flash Report" revealed that Summa Four had experienced some slight negative variances from its overall budgeted revenues and costs for the reporting period ending December 31, 1993. Such evidence hardly supports the inference that the demand for the SDS switch was not increasing in the named international markets.

■ Moreover, the additional statement in the January 20 "Flash Report" that Summa Four's "overall International sales and marketing efforts are currently under review and will be revised" provides little further support for Gross's claim. That Summa Four was reviewing its overall international marketing efforts does not contradict the assertion in the January 18 press

release that demand for the SDS switch was increasing in certain areas. Neither do the later reports and meeting minutes adverted to in the amended complaint adequately support the inference that the excerpt from the January 18 press release was false when made.[5] *See, e.g., Shaw,* 82 F.3d at 1223 (under Rule 9(b), a plaintiff may not contrast a defendant's past optimism with less favorable actual results, and then simply contend the difference is fraud). None of these later reports or minutes specifically reflect on demand for the SDS switch in the China, Chile, or Colombia markets. More importantly, although they arguably suggest that Summa Four was experiencing growing difficulties in the management of its international operations at the time those documents or minutes were issued (in late February, April, and June), they do not adequately support the inference that the company knew of these difficulties (or that they even existed) when it issued the January 18 press release.

### 3. May 3 Press Release: Misleading Omissions of Current Facts

■ Gross also contends that Summa Four made several technically accurate statements about its receipt of orders without disclosing facts known to the company that were necessary to make the disclosed statements not misleading. Gross points principally to an excerpt from the May 3 press release, stating that "[i]n the fourth quarter [ending March 31, 1994], the Company [had] *received significant orders* from AT & T,

McCaw, Sprint, GTE, Unisys, and IBM to address a broad range of applications."[6] Gross contends that this statement was materially misleading because Summa Four did not also tell investors that, at that time, it was experiencing delays in consummating contracts for at least one of these orders, in receiving other orders, and in shipping products. We find Gross's arguments unavailing.[7]

First, assuming *arguendo* that Gross has alleged sufficiently particular facts to support the inference that the company knew about the purported delays at the time it issued the May 3 press release, we do not believe that those alleged delays make Summa Four's statement that it had received "significant orders" in the prior quarter materially misleading. As Gross acknowledges, the statement about the orders is not false: Gross does not contend that Summa Four did not receive the orders. Moreover, the statement specifically concerns past events—the receipt of orders in the prior quarter. We have consistently held that the fact that a company makes an affirmative true statement about past results does not give rise to a duty to comment on its current status. *Serabian,* 24 F.3d at 361; *Capri Optics Profit Sharing v. Digital Equip. Corp.,* 950 F.2d 5, 8 (1st Cir.1991).

Moreover, the cases on which Gross relies for the proposition that the failure to disclose information similar to that alleged here was a

5.  Summa Four's January Monthly Operating Report, issued February 25, 1994, states, *inter alia,* that

> [a] major reorganization of sales responsibilities in [the company's international operations] is planned to take place during March. It is intended to refocus that organization on European opportunities and to emphasize the development of distribution channels in major marketplaces such as France and Germany.

The report further states that a "corporate reorganization of Austrel's domestic and international marketing responsibilities has slowed completion of the Australian opportunities."

Summa Four's March Monthly Operating Report, issued in April 1994, indicated that the company had replaced the Managing Director of Summa Four's European operations along with two other members of the international management team. In addition, an excerpt from the minutes of a June 20, 1994, meeting indicated that Summa Four was experiencing further difficulties in its international operations.

6.  In the amended complaint, Gross never quotes the portion of the challenged statement that expressly indicates that it refers to orders received "[i]n the fourth quarter." Nevertheless, in reviewing a motion to dismiss, we may consider in its entirety a relevant document explicitly relied on by the plaintiff in the complaint. *See Shaw,* 82 F.3d at 1220; *Philip Morris,* 75 F.3d at 809.

7.  Gross also points to an excerpt from the January 18 press release, which noted that Summa Four had received orders from Unisys, Sprint, IBM, DEC, Pacific Bell, USWest and AT & T. We reject Gross's claims with regard to this statement for essentially the same reasons that we reject his claim that the May 3 statement was materially misleading.

material omission are clearly distinguishable. For example, Gross cites *Alfus v. Pyramid Technology Corp.*, 764 F.Supp. 598, 603–04 (N.D.Cal.1991), as holding that a company's failure to disclose, *inter alia*, "manufacturing delays" and "flattening sales" was an omission sufficient to survive the company's motion to dismiss. In *Alfus*, however, the public statements allegedly undermined by the nondisclosed information were more specific statements about the company's revenue and earnings potentials than those Gross alleges here. Where Gross only points to two public statements concerning past orders received by Summa Four, the statements in *Alfus* dealt with definite projections (*e.g.*, "[W]e forecast total revenue growth of 40 percent, to $110–120 million. We view this as a conservative estimate."). *Id.* at 602; *see also In re Sunrise Technologies Sec. Litig.*, [1992 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 97,042 (N.D.Cal. Sept. 22, 1992) (similar). In short, we do not believe that Gross's allegations that the company knew, but failed to disclose, that it was suffering various delays in closing contracts, receiving orders, and shipping products are sufficient to support a claim that its statement in the May 3 press release about past orders received was materially misleading. Furthermore, to the extent that the statement that Summa Four had received "significant orders" carries a positive implication about its future success (*viz.*, that Summa Four received significant orders last quarter implies that it would fill and profit from those orders this quarter), and so might, arguably, be the basis for a duty to update claim, we think this statement falls in the category of vague and loosely optimistic statements that this court has held nonactionable as a matter of law. *See Glassman*, 90 F.3d at 635; *Shaw*, 82 F.3d at 1217–19.

In any event, the amended complaint does not set forth sufficiently particular facts from which one could reasonably infer that Summa Four knew about the alleged delays at the time it issued the May 3 press release. Gross first points to a March 17 report that stated both that Summa Four had experienced "delays in resolving several customer issues and gaining closure on contracts [that] caused some [revenue] slippage out of [February]" and that, due to delays of several major orders in *February*, Summa Four had reduced its internal bookings and revenue forecasts for the quarter ending March 31, 1994. Both of these excerpts, however, speak to events that occurred in February 1994 and do not support the inference that Summa Four was continuing to experience delays in May substantial enough to make the statements in the May 3 press release materially misleading. Moreover, neither do we believe that the references in the minutes of the June 14 board meeting to delays in orders that the company was experiencing at that time sufficiently support the inference that Summa Four was (and knew that it was) experiencing the alleged delays and other difficulties at the time of the May 3 press release. The June 14 board meeting was held five weeks after the company issued the May 3 press release. *Compare Philip Morris*, 75 F.3d at 812 (cannot infer that company knew statements in prospectus concerning retail sales were false when made on the basis that decline in sales was announced three weeks later) *with Shaw*, 82 F.3d at 1224–25 (where prospectus was issued just eleven days prior to the end of the quarter with disappointing results—and three weeks prior to the actual disclosure of the disappointing results—the proximity in time, although not sufficient by itself to survive Rule 9(b), provided some support for the fraud claims).

## 4. Overstatement of Revenue

Gross also claims that Summa Four's statements regarding its revenue and earnings during the class period were materially misleading because, contrary to GAAP, Summa Four recognized revenue upon receipt of orders rather than on shipment of products. Gross claims that this premature recognition of income allowed Summa Four to overstate significantly its revenues and earnings during the class period.

To support this claim, Gross alleges that, although Summa Four typically requires twelve to twenty weeks to ship its switches following the placement of an order, Fiedler stated at a June 14 board meeting that the company could generate up to $4.7 million in

new revenues through the receipt of new orders in the two weeks remaining before the end of the quarter. Gross contends that, given the time it takes Summa Four to fill orders, the statement is inexplicable unless the company was recognizing revenue upon receipt of orders instead of upon shipment. Gross finds further corroboration for this claim in Summa Four's May 1994 board meeting minutes where it is recorded that the company's chief financial officer was working on a new "revenue recognition policy" that was to be "more formalized and somewhat more restrictive" than its previous policy.

Though these contentions give us some pause, we nonetheless agree with the district court that Gross failed to plead this claim with sufficient particularity for purposes of Rule 9(b). As we have noted, "a general allegation that the practices at issue resulted in a false report of company earnings is not a sufficiently particular claim of misrepresentation [to satisfy Rule 9(b)]." *Serabian*, 24 F.3d at 362 n. 5. In this case, Gross has failed to allege any particulars to support his general allegation of inflated earnings through the use of improper accounting methods. Specifically, he has not alleged the amount of the putative overstatement or the net effect it had on the company's earnings. *See Shushany v. Allwaste, Inc.*, 992 F.2d 517, 522 (5th Cir.1993) (allegation that company had adjusted the accounting of its inventory to inflate revenues and earnings does not sufficiently plead fraud where complaint does not explain, *inter alia*, how the adjustments affected the company's financial statements and whether they were material in light of the company's overall financial position); *Roots Partnership*, 965 F.2d at 1419 (allegation that company "failed to establish adequate reserves for its excessive and outdated inventory" does not satisfy Rule 9(b) where

investor does not allege "what the reserves were or suggest how great the reserves should have been"); *Decker v. Massey–Ferguson, Ltd.*, 681 F.2d 111, 116 (2d Cir.1982) (allegation that company's failure to write down value of obsolete equipment does not sufficiently plead fraud where plaintiff did not allege amounts at which equipment was carried—or should have been carried—on company's books); *Schick v. Ernst & Young*, 141 F.R.D. 23, 27 (S.D.N.Y.1992) (allegations that accountants "significantly overstated" assets of company in prospectus did not adequately particularize the alleged misrepresentations and omissions where plaintiff failed to allege the amount of the purported overstatement); *cf. Cohen v. Koenig*, 25 F.3d 1168, 1173 (2d Cir.1994) (fraud pleaded with sufficient particularity by setting out representations made, what financial figures they were given, and what they alleged to be the true financial figures).

Moreover, the single statement by Fiedler during the minutes of the June 14 board meeting is far too tenuous a foundation (at least for Rule 9(b) purposes) to support Gross's claim that Summa Four had fraudulently overstated its revenue. Arguably, the statement supports a reasonable inference that the company, or at least Fiedler, may have contemplated booking revenue upon the receipt of orders rather than shipment for the quarter ending on June 30, 1994; however, we do not think that the statement, by itself, is sufficient to indicate that the company had actually booked as revenue sales instead of shipments in any previous quarter.[8] Moreover, we do not think the ambiguous statements taken from the minutes of the May 1994 board meeting concerning review of the company's accounting system corroborate Fiedler's June 14 statement sufficiently to overcome the deficiencies in Gross's pleadings.[9]

**8.** As with the June 29 letter, Gross would have no standing to assert a securities fraud claim that Summa Four misstated its revenue only for the quarter ending June 30, 1994.

**9.** Gross also contends that the district court erred in refusing to consider two additional affidavits Gross filed with the court to accompany his motion for reconsideration pursuant to Fed R. Civ. P. 59(e). The district court refused to

consider the additional affidavits, noting that Gross had "not demonstrated that he could not have produced this information in response to defendant's motion to dismiss." In that the affidavits address whether the amended complaint adequately alleged undisclosed facts to support the inference that a reasonable investor would have considered Summa Four's public statements to be false and misleading—an issue clearly before the court on Summa Four's motion to

## III.

### Conclusion

For the foregoing reasons, we *affirm* the judgment of the district court. *Costs to appellee.*

dismiss—we find no abuse of discretion by the district court in its refusal to consider them. *See, e.g., Williams v. Poulos,* 11 F.3d 271, 289 (1st Cir.1993) (reconsideration rulings reviewed only for abuse of discretion).