DIANA PAOLUCCI CORPORATION, a Puerto Rican corporation, and Francisco Campolieto, Plaintiffs,

v.

CARBONELL & ASTOR, Guzman & Carbonell; Carbonell & Co., Miguel Carbonell, Annie Astor De Carbonell, the Conjugal Partnership by and between Miguel Carbonell and Annie Astor De Carbonell, Eduardo Guzman Valiente, Angie Casas de Guzman, the Conjugal Partnership by and between Eduardo Guzman Valiente and Angie Casas de Guzman, XYZ Insurance Company, John Does and Jane Does, Defendants.

Civil No. 96–1636 (JP).

United States District Court, D. Puerto Rico.

Dec. 19, 1996.

Alfredo Castellanos–Bayouth, Hato Rey, PR, for Plaintiff.

Eugenio C. Romero, Hato Rey, PR, Andrés Guillemard Noble, Nachman, Santiago, Bray, Guillemard & Carrión, Santurce, PR, for Defendant.

## OPINION AND ORDER

PIERAS, District Judge.

This is an action for damages for federal securities fraud pursuant to Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. § 240.10b–5, promulgated thereunder by the Securities Exchange Commission ("SEC"). Plaintiffs also assert pendent claims sounding in fraud, conspiracy to defraud and negligence. Plaintiff Francisco Campolieto ("Campolieto") is the majority owner of plaintiff Diana Paolucci Corporation ("DPC"). Defendants are accountants, various accounting firms formed by them, and the conjugal partnerships formed between the accountants and their spouses.

The Court has before it defendants' motion to dismiss (**docket No. 12**), plaintiffs' opposition thereto (**docket No. 23**), and defendants' reply to the opposition (**docket No. 30**). Defendants argue for dismissal on various grounds: 1) PaineWebber, Inc. ("PaineWebber") and Ramón Almonte ("Almonte") are indispensable parties that cannot be joined; 2) plaintiffs fail to state a claim for fraud or conspiracy to defraud under federal securities or common law with the requisite degree of particularity; 3) plaintiffs fail to state a claim for negligence and emotional distress for which relief may be granted; 4) the complaint is time barred; 5) the complaint fails to state a claim against Guzmán & Carbonell, Inc., Carbonell & Co., Eduardo Guzmán Valiente, Angie Casas de Guzmán, and the conjugal partnership constituted by and between them. Since the Court finds that plaintiffs have failed to state a claim for fraud under the federal securities laws with the requisite degree of "particularity," it hereby **GRANTS** the motion to dismiss without addressing defendants' remaining arguments.

## I. STANDARD UNDER RULES 12(b)(6) AND 9(b)

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a defendant may, in response to an initial pleading, file a motion to dismiss the complaint for failure to state a claim upon which relief can be granted. It is well-settled, however, that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *see also Miranda v. Ponce Fed. Bank*, 948 F.2d 41 (1st Cir.1991). The court must accept as true the well-pleaded factual averments contained in the complaint, while at the same time drawing all reasonable inferences therefrom in favor of the plaintiff. *See McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 276, 96 S.Ct. 2574, 2576–77, 49 L.Ed.2d 493 (1976); *Correa–Martínez v. Arrillaga–Beléndez*, 903 F.2d 49, 51 (1st Cir.1990).

In opposing a Rule 12(b)(6) motion, "a plaintiff cannot expect a trial court to do his homework for him." *McCoy v. Massachu-*

setts *Inst. of Technology*, 950 F.2d 13, 22 (1st Cir.1991). Rather, the plaintiff has an affirmative responsibility to put his best foot forward in an effort to present a legal theory that will support his claim. *Id.* at 23 (citing *Correa–Martinez*, 903 F.2d at 52; *Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 16 (1st Cir.1989); *Ryan v. Scoggin*, 245 F.2d 54, 57 (10th Cir.1957)). Plaintiff must set forth in his complaint "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable theory." *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir.1988).

Rule 9(b) provides that all claims for fraud shall state the circumstances constituting fraud with particularity. Fed.R.Civ.P. 9(b). Malice, intent, knowledge, and other conditions of mind may be averred generally. *Id.* In the context of securities fraud, the First Circuit has held that:

> general averments of defendants' knowledge of material falsity will not suffice. Consistent with Fed.R.Civ.P. 9(b), the complaint must set forth "specific facts that make it reasonable to believe that the defendant[s] knew that a statement was materially false or misleading." The rule requires that the particular times, dates, places, or other details of the alleged fraudulent involvement of the actors be alleged.

*Serabian v. Amoskeag Bank Shares, Inc.*, 24 F.3d 357, 361 (1st Cir.1994). "We have been especially rigorous in demanding such factual support in the securities context to minimize the chance 'that a plaintiff with a largely groundless claim will bring a suit and conduct extensive discovery in the hopes of obtaining an increased settlement, rather than in the hopes that the process will reveal relevant evidence.'" *Romani v. Shearson Lehman Hutton*, 929 F.2d 875, 878 (1st Cir. 1991) (citing *New England Data Servs., Inc. v. Becher*, 829 F.2d 286, 288 (1st Cir.1987)). "The requirement that supporting facts be pleaded applies even when the fraud relates to matters peculiarly within the knowledge of the opposing party." *Romani*, 929 F.2d at 878.

## II. PLAINTIFFS' ALLEGATIONS

According to plaintiffs' complaint, DPC established an account with PaineWebber under the supervision of account executive Almonte around September 7, 1990. Almonte was the Senior Vice President of Investment in PaineWebber's Hato Rey office. The account was nondiscretionary and required DPC's prior authorization for all trades. Campolieto, on behalf of DPC, advised Almonte and PaineWebber that the investment objective was to invest the funds for income in safe, low-risk investments. On November 1, 1993, DPC's account was fully invested in a Tennessee Valley Authority bond with a face value of $750,000.00. On November 10 and 30, 1993, Almonte purchased one million dollar Tennessee Valley Authority bonds on margin with funds borrowed from Paine-Webber, allegedly without Campolieto's consent. Plaintiffs attached copies of the trade confirmations to the complaint as exhibits 1 and 2. Paragraph 24 of the complaint states that the margin purchases were "without [plaintiffs'] knowledge, consent, approval, or authorization." According to plaintiffs, PaineWebber required financial statements before it would advance the credit for the margin trades. However, Almonte could not request the financial statements from DPC because the trades were unauthorized. Therefore, to perpetuate the fraud, he obtained the financial statements (exhibit 3 to the complaint) from the defendants. Paragraph 26 of the complaint states, in pertinent part: "[T]he financial statements contained false financial information relative to DPC's assets, liabilities and owners equity. The Defendants prepared the false financial statements for their own financial gain." Plaintiffs allege that the fraudulent financial statements were prepared pursuant to a conspiracy among PaineWebber, Almonte and the defendants. All of the financial information contained in the statements was allegedly provided by PaineWebber and Almonte via a facsimile transmission consisting of what appear to be print-outs from PaineWebber's computer system (exhibit 4 to the complaint).

The date at the bottom of these print-outs is Thursday, December 30, 1993.[1]

Campolieto discovered the unauthorized trades around September, 1994, when he was recovering from open-heart surgery. By then, the market value of the securities had dropped by over $600,000.00. On February 8, 1995, DPC initiated a National Association of Securities Dealers arbitration claim against PaineWebber and Almonte (exhibit 5 of the complaint). Around February, 1996, the plaintiffs learned of the defendant accounting firms' role in the alleged conspiracy as a result of discovery in the arbitration proceeding. According to the arbitration complaint that was attached as exhibit 5 to the complaint, DPC's account statements were mailed to Miami and Puerto Rico. However, Campolieto had moved to Argentina and only reviewed the statements once a year when he travelled to Miami.

The complaint alleges that defendants, in connection with the purchase and sale of securities, intentionally and/or in reckless disregard of DPC's rights and the truth, employed devices, schemes and artifices to defraud DPC. Plaintiffs allege that defendants' misrepresentations or omissions include: 1) the preparation, at the request of PaineWebber and Almonte, of false financial statements; 2) delivery and disclosure of the false financial statements to PaineWebber without DPC's authorization, review or approval; and 3) the failure to disclose the fraudulent acts being performed by Paine-Webber, Almonte and the other defendants. Plaintiffs assert that these acts and/or omissions constitute a primary violation of § 10(b) and Rule 10b–5.

## III. APPLICABLE LAW AND ANALY-SIS

### A. FEDERAL SECURITIES FRAUD

15 U.S.C. § 78j(b) states:

It shall be unlawful for any person, directly or indirectly, by the use of any means of instrumentality of interstate commerce or the mails, or of any facility of any national securities exchange ...

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

Under the authority of this statute, the SEC promulgated Rule 10b–5, which provides:

It shall be unlawful for any person, directly or indirectly by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange

(1) to employ any device, scheme, or artifice to defraud,

(2) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(3) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, "in connection with the purchase or sale of any security."

17 C.F.R. § 240.10b–5.

In *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994), the U.S. Supreme Court held that there is no liability under § 10(b) for "aiding and abetting" a securities violation.[2] Central Bank of

---

**1.** The complaint states that "To obtain the loan from PaineWebber to fund the two million dollars in unauthorized purchases, PaineWebber required financial statements in the name of DPC." Complaint, ¶ 25. Now, however, plaintiffs apparently concede that the allegedly fraudulent financial statements were actually provided to defendants *after* the unauthorized transactions had already occurred, since their opposition states: "Mr. Almonte made the purchase of the securities before submitting the fraudulently ob-

tained financial statements in order to 'cram down' the transaction through Paine Webber and realize financial gain before the regulatory mechanism would detect and reject his fraudulent scheme." Opposition to Motion to Dismiss at 11.

**2.** Various courts have concluded that the decision in *Central Bank of Denver* precludes the possibility of all forms of secondary liability for violations of the federal securities laws. *See, e.g.,*

Denver served as indenture trustee for a sale of bonds secured by real estate. As trustee, Central Bank was required to hold real estate worth at least 160 percent of the value of the bonds. Prior to a bond issuance, Central Bank obtained evidence that the actual value of the security was less than the minimum 160 percent required by the bond covenants. Central Bank agreed to the bond issuer's request to delay updating the appraisal of the real estate security until after the bonds had been issued. The bond issuer defaulted and bondholders sued Central Bank for assisting in the alleged fraud.

The Supreme Court held that § 10(b)'s statutory language limited liability to those who actually commit a manipulative or deceptive act (or omission). *Id.* at 184–85, 114 S.Ct. at 1452. The Supreme Court reasoned that since Congress did not attach private aiding and abetting liability to any of the express causes of action in the 1933 and 1934 securities Acts, it could infer that Congress likely would not have attached aiding and abetting liability to § 10(b) had it provided for a private cause of action under that section. *Id.* at 179–80, 114 S.Ct. at 1449. However, the Supreme Court concluded its opinion with the observation that:

> The absence of § 10(b) aiding and abetting liability does not mean that secondary actors in the securities markets are always free from liability under the securities Acts. Any person or entity, including a lawyer, accountant, or bank, who employs a manipulative device or makes a material misstatement (or omission) on which a purchaser or seller of securities relies may be liable as a primary violator under 10b–5, assuming *all* of the requirements for primary liability under Rule 10b–5 are met.

*Id.* at 191, 114 S.Ct. at 1455 (emphasis in original); *see also In re ZZZZ Best Securities Litigation,* 864 F.Supp. 960, 969 (C.D.Cal.1994) (plaintiffs must allege that defendants "not only provided accounting assistance while it knew that [the corporation] and its officers were committing the fraud,

but that its *own* acts were manipulative or its statements (omissions) were deceitful").

Therefore, to avoid dismissal, plaintiffs—as they recognize—must state a claim against defendants for a primary violation of § 10(b). "To state a cause of action under § 10(b) and Rule 10b–5, a plaintiff must plead, with sufficient particularity, that the defendant made a false statement or omitted a material fact, with the requisite scienter, and that the plaintiff's reliance on this statement caused the plaintiff's injury." *Gross v. Summa Four, Inc.,* 93 F.3d 987, 991 (1st Cir.1996) (citing *Shaw v. Digital Equip. Corp.,* 82 F.3d 1194, 1217 (1st Cir.1996)). Other cases add a fourth element: due care by the plaintiff. *Holmes v. Bateson,* 583 F.2d 542, 551 (1st Cir.1978). After careful review of the complaint, we find that plaintiffs fail to plead the first and second elements with the requisite specificity.

### B. FALSE STATEMENT OR OMISSION OF A MATERIAL FACT

■ We look to determine whether plaintiffs have alleged the particular times, dates, places, or other details of the alleged fraud. Plaintiffs allege that the financial statements prepared by defendants were false, and this reference probably is sufficient to identify the time and place of the allegedly false statements. *Romani,* 929 F.2d at 878. However, there are no factual allegations to support plaintiffs' conclusory allegations that the financial statements were false. *See Serabian,* 24 F.3d at 362 n. 5 ("A general allegation that the practices at issue resulted in a false report of company earnings is not a sufficiently particular claim of misrepresentation"); *see also Gross,* 93 F.3d at 996 (collecting additional cases following same rule). Paragraph 26 states: "Specifically, the financial statements contained false financial information relative to DPC's assets, liabilities and owners equity." However, plaintiffs fail to indicate which of DPC's assets or liabilities were not accurately reflected in the financial statement. There are no factual allegations

---

*Van de Velde v. Coopers & Lybrand,* 899 F.Supp. 731 (D.Mass.1995) (no liability for conspiracy to violate the securities laws); *In re Faleck & Mar-*

*golies, Ltd.,* 1995 WL 33631 *12 (S.D.N.Y.) (same).

that would allow this Court to conclude that the financial statements were indeed false.

Plaintiffs assert two omissions that allegedly subject defendants to liability under § 10(b): the failure to disclose delivery of the financial statements to PaineWebber and failure to disclose Almonte's and PaineWebber's fraudulent acts. The First Circuit explored the duty to disclose in the context of securities fraud in *Roeder v. Alpha Industries*, 814 F.2d 22 (1st Cir.1987). *Roeder* was a class action brought against Alpha for failure to disclose that the company had paid a bribe to obtain government subcontracts. The value of stock dropped after the company announced that one of its vice-presidents probably would be indicted. The plaintiffs alleged that Alpha should have disclosed the improprieties sooner, and sought to recover the loss in stock value attributable to the overdue announcement of Alpha's conduct. The First Circuit held that information regarding the illegal and fraudulent conduct was "material" since many investors would have considered it important to know of such conduct before making their investment decision inasmuch as the information was relevant to the competency of Alpha's management and to the liability exposure of the corporation.

Nonetheless, the First Circuit pointed out that "there is no liability under Rule 10b–5 unless there was a duty to disclose [the material information]." *Id.* at 26. The duty to disclose arises from trading on insider or confidential information, or when necessary to correct prior inaccurate, incomplete, or misleading statements. *Id.* The First Circuit rejected the class plaintiffs' claim that "a corporation has an affirmative duty to disclose all material information even if there is no insider trading, no statute or regulation requiring disclosure, and no inaccurate, incomplete, or misleading prior disclosures," noting that the prevailing view is that no such affirmative duty exists. *Roeder*, 814 F.2d at 27. The Court of Appeals held that plaintiffs had failed to state a claim for securities fraud because their complaint did not allege facts that, if proved, would establish Alpha had a duty to disclose the alleged illegal payments. *Roeder*, 814 F.2d at 28.

Like the plaintiffs in *Roeder*, plaintiffs in the instant case seek to recover the loss in value of their securities that they claim could have been avoided had defendants disclosed certain material information to them sooner. Assuming that defendants knew this material information (*i.e.*, that the financial statements were false and that PaineWebber and Almonte would use the financial statements in connection with unauthorized margin trades), *Roeder* holds that plaintiffs must still allege facts that, if proved, would establish that defendants had a duty to disclose this information to plaintiffs. Plaintiffs' complaint is deficient in this respect. Plaintiffs' complaint does not allege that defendants had any statutory or regulatory duty to disclose that they had prepared the financial statements. Certainly, the complaint does not allege that defendants were trading on inside or confidential information nor that they had made inaccurate, incomplete, or misleading prior disclosures, thereby imposing a duty to disclose the material information. A duty to disclose under § 10(b) does not arise from the mere possession of nonpublic market information. *Chiarella v. United States*, 445 U.S. 222, 230, 100 S.Ct. 1108, 1115–16, 63 L.Ed.2d 348 (1980). In this case, the information in question is not even market information because it relates to the Diana Paolucci Corporation, not the Tennessee Valley Authority bonds.

## C. SCIENTER

■ Furthermore, the complaint fails to plead facts that make it reasonable to believe that defendants acted with scienter. Scienter "refers to a mental state embracing intent to deceive, manipulate, or defraud" and there can be no liability for damages under § 10(b) without it. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n. 12, 96 S.Ct. 1375, 1381, n. 12, 47 L.Ed.2d 668 (1976). The U.S. Supreme Court has left open whether reckless behavior is sufficient to impose civil liability under § 10(b) and Rule 10b–5. *Id.* Although the First Circuit has not squarely addressed whether recklessness is sufficient for liability under § 10(b), it has allowed plaintiffs to proceed on the premise that allegations of recklessness satisfy the scienter element. *See Cook v. Avien*, 573 F.2d

685, 692 (1st Cir.1978) ("Assuming without deciding that reckless conduct can result in a § 10(b) liability ..."). Recklessness under § 10(b) is "a highly unreasonable omission, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or so obvious that the actor must have been aware of it." *Sundstrand Corp. v. Sun Chemical Corp.*, 553 F.2d 1033, 1045 (7th Cir.1977) (quoted with approval in *Cook*, 573 F.2d at 692), *cert. denied*, 434 U.S. 875, 98 S.Ct. 225, 54 L.Ed.2d 155 (1977). Moreover, "[a]lthough scienter need not be alleged with great specificity, plaintiffs are still required to plead the factual basis which gives rise to a 'strong inference' of fraudulent intent." *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir.1990) (cited with approval in *Greenstone v. Cambex Corp.*, 975 F.2d 22 (1st Cir.1992)). That the financial statements were inaccurate, that plaintiffs did not authorize defendants to prepare them, or that defendants failed to observe Generally Accepted Accounting Principles (GAAP) is insufficient. *See Serabian*, 24 F.3d at 362 ("Nothing in the complaint suggests that the [act] was fraudulent, even if, as the complaint alleges, it was a violation of [GAAP]").

The complaint alleges that "Defendants acted intentionally, recklessly and with scienter." Complaint, ¶ 41. "The courts have uniformly held inadequate a complaint's general averment of the defendant's 'knowledge' of material falsity, unless the complaint also sets forth specific facts that make it reasonable to believe that defendant knew that a statement was materially false or misleading." *Greenstone*, 975 F.2d at 25. Plaintiffs aver three grounds for inferring that defendants' acted with scienter: 1) they prepared false financial statements at the request of and with information provided by PaineWebber and Almonte, without ever personally examining the books of the Diana Paolucci Corporation; 2) they delivered the false financial statements to PaineWebber without DPC's authorization, review or approval; and 3) they failed to disclose preparation of the financial statements or the fraudulent acts

being performed by PaineWebber, Almonte and themselves. The issue is whether these averments allege facts that make it reasonable to believe that defendants acted with a fraudulent intent.

With respect to defendants' preparation of a false financial statement, we have already noted that the complaint does not spell out the particulars of how the financial statements were false. Furthermore, the complaint does not set forth specific facts that make it reasonable to believe that the defendants knew that the information provided by PaineWebber and Almonte was inaccurate and consequently that the financial statements were false. In their opposition, plaintiffs state that "[t]he falsity of the financial statements that were prepared by Defendants can be easily ascertained by the fact that, Defendants never reviewed any of Plaintiffs' books or records, and prepared the financial statements solely from information supplied to them by PaineWebber and the broker." Complaint at ¶ 27.

This amounts to an allegation that it is an unreasonable accounting practice to prepare financial statements based on information provided by an entity other than the one to whom the statements relate. Therefore, any accountant who prepares financial statements upon the request of an outside party—and fails to disclose this to the company to which the statements relate—must be motivated by a fraudulent intent. It may be a violation of GAAP to prepare financial statements without consulting a corporation's books, but the failure to follow GAAP, without more, is insufficient to establish scienter under § 10(b). *In re Software Toolworks Inc.*, 50 F.3d 615, 627 (9th Cir.1994) (quoting *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1426 (9th Cir.1994), *cert. denied sub nom. Miller v. Pezzani*, —— U.S. ——, 116 S.Ct. 185, 133 L.Ed.2d 123 (1995)), *cert. denied sub nom. Montgomery Sec. v. Dannenberg*, —— U.S. ——, 116 S.Ct. 274, 133 L.Ed.2d 195 (1995).

■ Furthermore, even if defendants failed to disclose preparation of the financial statements, or prepared them using information provided by PaineWebber and Almonte,

this is insufficient to show recklessness under § 10(b) because such conduct does not present a danger of misleading buyers or sellers of securities that was either known to the defendants or so obvious that they must have been aware of the danger. Cases involving § 10(b) liability against accountants generally relate to accountants writing audit opinions or preparing financial statements for corporations whose stock was purchased by the plaintiffs in the cases. These cases differ in a key respect: because the accountants were preparing audit opinions and/or financial statements for corporations whose stock sold on the market, they were aware that purchasers of the corporation's securities would likely rely on their audit opinions and/or financial statements. Here, the financial statements do not relate to the securities at issue (*i.e.*, the Tennessee Valley Authority bonds), but rather to the Diana Paolucci Corporation, whose stock is not sold on the market. Therefore, the complaint must allege facts that would make it reasonable to believe that defendants knew that their conduct presented a danger of misleading buyers or sellers of securities. In other words, plaintiffs must allege facts that would make it reasonable to believe that defendants knew or should have known that preparation of financial statements of the Diana Paolucci Corporation using information provided by Almonte and PaineWebber, and failure to advise plaintiffs of the existence of the statements, would mislead investors of securities traded on the market.

As noted above, the complaint does not contain any allegations supporting the contention that defendants had a duty of disclosure. Even more, the complaint lacks any factual averments that would make it reasonable to believe that defendants indeed knew that PaineWebber and Almonte intended to use the financial statements in connection with a scheme to purchase bonds on margin credit without plaintiffs' authorization. Defendant's failure to disclose the margin trades cannot be considered fraudulent unless defendants knew that PaineWebber and Almonte intended to use the financial statements in connection with unauthorized margin trades, and had a duty to disclose this to plaintiffs.

As the complaint fails to allege fraud with the requisite degree of particularity, the complaint is hereby **DISMISSED.** Since there is no independent basis for federal jurisdiction over plaintiffs' pendant claims, these are likewise **DISMISSED.** Judgment shall be entered accordingly.

IT IS SO ORDERED.