Swain v. N.H. Electric Coop.          CV-01-196-M    10/19/01
                    UNITED STATES DISTRICT COURT

                        DISTRICT OF NEW HAMPSHIRE


Elizabeth Swain,
     Plaintiff

     v.                                    Civil No. 01-196-M
                                           Opinion No. 2001 DNH 193
New Hampshire Electric Cooperative,
Inc.; Metropolitan Life Insurance
Company; and National Rural Electric
Cooperative Association,
     Defendants


                            **O R D E R**


     In this suit, removed from the New Hampshire Superior Court

on the basis of ERISA preemption, Elizabeth Swain seeks

injunctive relief, declaratory judgment, and damages, based upon

her unsuccessful attempt to purchase a policy insuring the life

of her deceased husband, Lawrence Swain ("Swain"), from

Metropolitan Life Insurance Company ("MetLife").  Before the

court is defendants' motion to dismiss for failure to state a

claim on which relief can be granted.  Plaintiff objects.  For

the reasons stated below, defendants' motion to dismiss (document

no. 15) is granted.

## Standard of Review

A motion to dismiss for "failure to state a claim upon which relief can be granted," FED. R. CIV. P. 12(b)(6), requires the court to conduct a limited inquiry, focusing not on "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). When considering a motion to dismiss under FED. R. CIV. P. 12(b)(6), the court must "accept as true all well-pleaded allegations and give plaintiffs the benefit of all reasonable inferences." Cooperman v. Individual, Inc., 171 F.3d 43, 46 (1st Cir. 1999) (citing Gross v. Summa Four, Inc., 93 F.3d 987, 991 (1st Cir. 1996)). Furthermore, "[d]ismissal under FED. R. CIV. P. 12(b)(6) is only appropriate if the complaint, so viewed, presents no set of facts justifying recovery." Cooperman, 171 F.3d at 46 (citing Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1989)).

## Factual Background

The facts of this case, as alleged in plaintiff's complaint, and viewed in the light most favorable to her, are as follows.

Plaintiff's husband, Lawrence Swain, died on December 10, 1999, shortly after he retired from the New Hampshire Electric Cooperative, Inc. ("NHEC"). Among his employment benefits was a group life insurance policy issued by MetLife. But Swain's coverage under that policy terminated on November 1, 1999, the date of his retirement. Understanding that termination of his group life insurance coverage was imminent, Swain contacted Brenda Boisvert ("Boisvert") of NHEC in October to inquire about extending the coverage. Boisvert responded by sending to both Swain and MetLife a form titled "Conversion of Group Life Benefits to an Individual Policy" ("the form").

The form is dated October 26, 1999, was received by Swain sometime in early November, and lists November 1, 1999, as the

3

termination date for Swain's employee group life coverage.  In addition, the form contains the following relevant provision:

> You may apply for an Individual Life Insurance policy (other than Term Insurance), which will be issued without medical examination by Metropolitan Life Insurance Company (hereafter "MetLife"), if you apply for it and the required premium payment is made within:
>
> - **31 days from the date benefits were terminated, or**
> - **15 days from the date this notice is given, if notice is given more than 15 days from the date benefits were terminated.**
>   **In no event will this period extend beyond 91 days from the date benefits were terminated.**
>
> . . .
>
> To apply for an individual policy, visit, telephone, or write to any convenient MetLife Individual Sales Office in your area.  Please consult your local telephone directory or call 1-800-MET-LIFE for the office nearest you.

Swain never submitted an application to MetLife for an individual life insurance policy.  He died approximately forty days after his group life insurance benefits terminated.  While going through her deceased husband's papers, plaintiff discovered the form that Boisvert had sent in October, and realized that her

4

husband had not applied for an individual life insurance policy before he died.

On January 6, 2000, plaintiff and her daughter met with Gary Cook of MetLife. They asked whether the ninety-one day extension period referenced in the form allowed them to apply for insurance on Swain's life. Cook advised plaintiff to write to MetLife. The complaint does not allege any further contact between plaintiff and MetLife,[1] although it does allege that NHEC's parent company, National Rural Electric Cooperative Association, declined to help plaintiff obtain coverage and/or benefits from MetLife.

In this suit, plaintiff asks the court to: (1) enjoin defendants from denying coverage and preventing her from making a claim; (2) declare the existence of coverage and allow her to

_____

[1] There is no specific allegation that: (1) plaintiff submitted an application for an individual life insurance policy on Swain's life, or paid a premium to MetLife; or (2) MetLife declined to issue such a policy.

make a claim; and (3) order payment to be made under the terms of the individual MetLife policy that Swain was entitled to purchase upon the termination of his group life policy.  In addition, plaintiff makes two claims that appear to assert causes of action, respectively, for breach of contract and negligence.

## Discussion

Defendants move to dismiss on grounds that no application for an individual life insurance policy was ever submitted to MetLife within the time allowed for conversion from the group policy.  Plaintiff counters that the ninety-one day period referenced on the form creates, at the very least, an ambiguity that should be resolved in her favor – effectively affording her ninety-one days from November 1, 1999, the termination date of her husband's group policy, to convert the group policy to an individual life insurance policy.  The court cannot agree.

To begin, because plaintiff is seeking to collect benefits extended under an employee welfare plan (i.e., conversion of the

6

employee group life policy to an individual life insurance policy), the Employee Retirement Security Income Act of 1974 ("ERISA") (the basis for removal from the Belknap County Superior Court) governs disposition of this case. See 29 U.S.C. § 1132(a)(1)(B); see also 29 U.S.C. § 1144(a) ("Except as provided in subsection (b) of this section, the provisions of this subchapter . . . shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . ."). Although it is an open question, the court will assume that plaintiff has exhausted available administrative remedies under the plan, and will consider the merits of her claim. See Tomkins v. United Healthcare of New England, Inc., 203 F.3d 90, 94 (1st Cir. 2000) (citing Terry v. Bayer Corp., 145 F.3d 28, 35-36 (1st Cir. 1998) (emphasizing that "a prerequisite to obtaining judicial review . . . is that the claimant have [sic] exhausted the administrative remedies available to him.")). Furthermore, while the pleadings indicate that plaintiff never actually applied for the benefit she now seeks, the court will assume that she applied for that benefit, and was denied, thus bringing this

case within the scope of 42 U.S.C. § 1132(a)(1)(B). However, even making the favorable assumptions outlined above, and applying a de novo standard of review – the most favorable standard of review available to a plaintiff making an ERISA claim, see Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); Terry, 145 F.3d at 37, it is still apparent from the pleadings that neither plaintiff nor plaintiff's decedent meet the eligibility criteria for the benefit plaintiff seeks to collect.

Swain did not apply for an individual life insurance policy within the time period specified. Plaintiff contends that the ninety-one day period referenced on the form governs, and that she took effective action to convert her husband's group policy within that time.

The form that Boisvert sent to Swain, describing the eligibility requirements for obtaining individual life insurance coverage, plainly indicates two events that trigger an employee's

8

right to issuance of an individual life insurance policy upon retirement: (1) termination of group coverage; and (2) submission of an application for an individual policy (and payment of the required premium), within thirty-one days from the date that benefits were terminated (here, November 1), or within fifteen days from the date notice was given to the (former) employee of his right to obtain an individual policy (here, "early November), if notice was given more than fifteen days after benefits were terminated, but in no event later than ninety-one days from the date that benefits were terminated.

According to plaintiff's complaint, her husband received notice of his right to apply for an individual life insurance policy in "early November." If that is the case, and he received notice before November 15, then he got notice within fifteen days from the termination of his group life benefits, and, therefore, had thirty-one days from November 1, or until December 2, to apply for an individual life insurance policy and pay the required premium. However, assuming Swain received notice as

late as November 25 (which cannot fairly be called "early November), he would have had fifteen days from that date, or until December 10, to apply for an individual life insurance policy. Plaintiff does not assert that an application for an individual life insurance policy was submitted on or before December 10. Indeed, the first contact plaintiff had with MetLife concerning her husband's option to purchase individual life insurance to replace his group coverage occurred in January of 2000. Thus, plaintiff fails to allege facts that, if true, would entitle her to recover, even if she did have a right, under the plan, to obtain an insurance policy on her husband's life after his death, but during the conversion period described on the notice form he received.

Finally, the ninety-one day period described on the form is facially inapplicable to the facts pled in this case. That provision places an outer limit on the period during which an individual policy may be applied for – i.e., not more than ninety-one days after the group life benefit terminated. So, for

10

example, if notice was given eighty days after benefits terminated, the plan beneficiary would have to apply and pay a premium for an individual life insurance policy within eleven days. Since Swain received notice in "early November," less than fifteen days from the date his benefits were terminated, the ninety-one day outer limit provision is not relevant.

(It probably should also be noted, parenthetically, that as of December 10, when Swain died, there was no longer an insurable interest to which an individual life insurance policy could attach. After that date, absent at least a prior submission of an application, the conversion benefit was no longer available. Implicit in a request to obtain life insurance is the existence of a life to insure.)

## Conclusion

For the reasons given, plaintiff has not alleged facts which, if true, would entitle her to recover under ERISA, even assuming an otherwise proper claim for benefits, denial, and

exhaustion of administrative remedies.  Of course, the asserted state causes of action are preempted by ERISA.  Accordingly, defendants' motion to dismiss (document no. 15) is granted.  The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

October 19, 2001

cc:  Alvin E. Nix, Jr., Esq.
     William D. Pandolph, Esq.

12